245 F.3d 192 (2nd Cir. 2001)
 DANA KIMBERLY DEVILLA, Plaintiff,
WAYNE POWELL, as Executor of the estate of Dana Kimberly Devilla, Plaintiff-Appellant,
v.
SUNNY L. SCHRIVER, Superintendant, THOMAS A COUGHLIN, III, C.O. LYNCH and CROWLEY, C.O., Defendants-Appellees.
 Docket No. 00-177
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: March 9, 2001
 Decided: April 03, 2001
 
 [Copyrighted Material Omitted]
 JAMES OSTROWSKI, Buffalo, N.Y. (Salvatore P. Abbate, on the brief), for Plaintiff-Appellant.
 VICTOR PALADINO for Eliot Spitzer, Attorney General for the State of New York, Albany, N.Y. (Nancy A. Spiegel and Daniel Smirlock, on the brief) for Defendants-Appellees.
 Before: JACOBS and CALABRESI, Circuit Judges, and ARTERTON, District Judge.*
 CALABRESI, Circuit Judge:
 
 I. BACKGROUND
 
 1
 This is Dana Kimberly D'Villa's[1] ("D'Villa" or "plaintiff") second appeal in her Civil Rights action, originally brought in the United States District Court for the Western District of New York,[2] pursuant to 42 U.S.C. §1983. D'Villa alleges that while she was an inmate in the custody of the State of New York at the Albion Correction Facility (the "Albion Facility"), Corrections Officer Jeffrey Lynch ("Lynch") improperly disclosed to other inmates and prison staff members that she was HIV-positive, that she suffered from AIDS, and that she was a transsexual. In addition to suing Lynch, D'Villa also sued a second Corrections Officer named Crowley, the Albion Facility's Superintendent Sunny Schriber ("Schriber),[3] and the Commissioner of the Department of Correctional Services of the State of New York, Thomas Coughlin ("Coughlin").
 
 
 2
 D'Villa's amended complaint alleged that, because of the disclosure, she was ostracized and harassed by fellow inmates. In addition, D'Villa later testified that she was twice attacked due to the disclosure, and that she sustained physical injuries as a result of these attacks. D'Villa claims, on this basis, that defendants violated her constitutional right to privacy, deprived her of due process and equal protection as guaranteed under the Fifth and Fourteenth Amendments, and subjected her to cruel and unusual punishment in violation of the Eighth Amendment. In addition, D'Villa alleged that defendants violated §137(5) of New York's Correction Law (which prohibits the "degrading treatment" of inmates) and §2782(3) of New York's Public Health Law (which protects the confidentiality of a person's HIV status).
 
 
 3
 D'Villa consented to proceeding before a Magistrate Judge (Leslie G. Foschio), and the case went to trial. In the course of the trial, the district court dismissed all of D'Villa's claims against defendants Crowley and Coughlin, and also dismissed several of D'Villa's causes of action, including D'Villa's Eighth Amendment and §137(5) claims, against all of the defendants. Accordingly, just part of the cases against Lynch and Schriber were allowed to reach the jury, and the jury was left to decide only (1)(a) whether Lynch, by divulging D'Villa's AIDS-HIV condition and transsexualism, had violated D'Villa's federal constitutional right to privacy, or (1)(b) by disclosing her AIDS-HIV condition, had violated her rights under New York Public Health Law §2782(3), and (2) whether Schriber had violated D'Villa's federal privacy right by failing properly to train Lynch regarding this right.[4]
 
 
 4
 The jury returned a verdict in favor of Lynch, on both the federal §1983 privacy claim and the state §2782(3) claim, but against Schriber, on the federal §1983 privacy claim. The jury awarded D'Villa $ 5,000 in compensatory damages and $ 25,000 in punitive damages against Schriber, and the district court entered judgment on the jury's verdict. Following entry of judgment, D'Villa filed a motion to recover attorneys' fees and costs, and Schriber filed a motion to set aside the verdict against her. Schriber claimed both that she was protected by qualified immunity and that the verdict was at once against the weight of the evidence and inconsistent with the verdict in favor of Lynch. The district court granted Schriber's motion on the ground that the verdict against her was fatally inconsistent with the Lynch verdict. In addition, the district court denied D'Villa's application for costs and attorneys' fees because, given the court's decision in Schriber's favor, D'Villa was not a prevailing party. Following these rulings, the district court entered an amended judgment in favor of all defendants.
 
 
 5
 D'Villa appealed the judgment against her. She challenged the district court's (1) original finding that the defendants enjoyed qualified immunity against her Eighth Amendment claim and its consequent dismissal of that claim, (2) denial of an earlier oral application D'Villa had made to dismiss a prospective juror for cause, (3) grant of Schriber's motion to set aside the verdict against her, and (4) denial of D'Villa's application for costs and attorneys' fees.
 
 
 6
 In deciding D'Villa's appeal, we affirmed the judgment in Schriber's favor on D'Villa's privacy claim on the ground that Schriber was protected against that claim by qualified immunity. At the same time, however, we rejected the district court's conclusion that Schriber enjoyed qualified immunity from D'Villa's Eighth Amendment claim, and therefore vacated the judgment as to this claim and remanded the case for further proceedings. Furthermore, given our disposition of these two issues, we declined to decide D'Villa's claim that the district court erred in denying her application to dismiss a prospective juror for cause. Finally, we vacated the district court's denial of D'Villa's application for costs and attorneys' fees, since the determination on which this denial turned -- that D'Villa was not a prevailing party -- could not yet be made. See Powell v. Schriver, 175 F.3d 107, 110 (2d Cir. 1999).
 
 
 7
 On remand, the same district court again granted summary judgment in favor of defendants Schriber and Lynch on D'Villa's Eighth Amendment claim and denied D'Villa's application for attorneys' fees. In reaching this conclusion, the district court accorded substantial weight to the earlier jury verdict on D'Villa's privacy claim. The district court reasoned that "[i]n finding that Defendant Lynch did not violate D'Villa's privacy rights under either the First Amendment or New York Public Health Law §2782(3), the jury found either that it did not believe, based on the evidence, that defendant Lynch ever made the alleged statements... or that it believed... that it was commonly known [even before the alleged statements were made] that D'Villa was both HIV-positive and a transsexual." The district court observed that a necessary element of D'Villa's Eighth Amendment claim was that defendants had caused an injury to her that was sufficiently serious or harmful to count as the "cruel and unusual" punishment that the Constitution forbids, see, e.g., Hudson v. McMillian, 503 U.S. 1, 8 (1992). And it concluded that the jury's verdict on D'Villa's privacy claim, because it entailed a finding that no secrets were disclosed by Lynch, also meant that defendants could not have caused the injuries of which D'Villa had complained and therefore also negated D'Villa's Eighth Amendment claim. Finally, the district court found that "D'Villa has not pointed to any different evidence that would be presented were this matter scheduled for trial on the Eighth Amendment claim and... permitting a new trial based on the same evidence would undermine the integrity of the judicial process if a second jury's findings were inconsistent with the first."
 
 
 8
 D'Villa filed a timely notice of appeal, challenging "each and every part" of the district court's judgment.
 
 II. DISCUSSION
 
 9
 The district court's grant of summary judgment against D'Villa's Eighth Amendment claim depended substantially on the effect the district court gave to the jury's verdict on D'Villa's privacy claims. Accordingly, the central question on appeal is whether the district court properly construed the jury's verdict to require the grant of summary judgment. Addressing this question involves two distinct but inter-related inquiries: first, we consider as a formal matter what significance or authority -- what preclusive effect -- the jury's verdict, concerning D'Villa's privacy claims, has for the adjudication of D'Villa's Eighth Amendment claim; and, second, we consider as a substantive matter what facts that verdict should be interpreted as having established.
 
 
 10
 As regards the formal question, it is plain that the jury's verdict in the privacy trial cannot act either as res judicata or as collateral estoppel against D'Villa's assertion of her Eighth Amendment rights. It cannot act as res judicata on D'Villa's Eighth Amendment claim, because the district court's initial finding of qualified immunity prevented D'Villa from arguing that claim to the jury, and we expressly reversed the court's finding of qualified immunity on D'Villa's first appeal. See Bank of India v. Trendi Sportswear, Inc., 239 F.3d 428, 439 (2d Cir. 2000) (res judicata does not apply where a party attempted to litigate a claim but was denied a full and fair opportunity to do so). Similarly, the jury's verdict cannot collaterally estop D'Villa from asserting that Lynch made the statements alleged and that these statements disclosed secrets. This is so because our finding that qualified immunity barred the privacy claim deprived D'Villa of the chance to complete her appeal of the privacy verdict and thereby deprived her of the chance fully and fairly to litigate the question of whether Lynch had made the statements and what they disclosed. See Johnson v. Watkins, 101 F.3d 792, 795-96 (2d Cir. 1996) (the availability of appellate review of an adverse verdict is a necessary element of the full and fair opportunity to litigate an issue on which collateral estoppel depends).[5]
 
 
 11
 Accordingly, the only doctrine that might possibly justify the authority that the district court attributed to the jury's verdict is that of the law of the case. This notion serves to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit," 18 Wright, Miller & Cooper, Federal Practice and Procedure §4478 at 788, or, as the district court stated, to prevent the attack on "the integrity of the judicial process [that would occur] if a second jury's findings were inconsistent with the first." But, unlike the doctrines of res judicata and collateral estoppel, which a court cannot ignore where they apply, the law of the case, as Justice Holmes remarked, "merely expresses the practice of the courts generally to refuse to reopen what has been decided." Messinger v. Anderson, 225 U.S. 436, 444 (1912). It is, "at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses [this practice]." United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000) (quoting United States v. Martinez, 987 F.2d 920, 923 (2d Cir. 1993)). The appropriateness of applying the law of the case to a jury verdict depends, therefore, on the interpretation and quality of the verdict itself.
 
 
 12
 In granting summary judgment against D'Villa's Eighth Amendment claim, the district court interpreted the jury verdict, and in particular the verdict in favor of Lynch, as an unequivocal determination that either Lynch had not made the statements D'Villa attributed to him or that the content of those statements was already common knowledge at the Albion Facility. But this interpretation ignores the jury's verdict against Schriber, which was rendered in response to instructions that the jury might find Schriber liable only if it found that her failure to train Lynch "was the proximate cause of damages sustained by plaintiff," and that "as a result [of this failure], plaintiff's HIV positive condition and illness and sex change operation were so disclosed." Given these instructions, the jury's verdict against Schriber on the privacy claim cannot be read except as entailing that Lynch made the statements as D'Villa alleged and that what Lynch said disclosed secrets. Interpreted in this way, the jury verdict runs directly counter to the district court's grant of summary judgment against D'Villa on the Eighth Amendment claim.
 
 
 13
 In fact, there are at least two ways of dealing with the jury's verdict for Lynch and against Schriber that negate the district court's summary judgment ruling. First, as discussed above, one can conclude that the jury verdict was inconsistent. As such, it cannot constitute a persuasive rejection of D'Villa's claim that Lynch disclosed a previously secret HIV-positive status, AIDS, and transsexualism. Second, it is quite possible to render the Lynch/Schriber verdicts consistent with each other in ways that permit the conclusion that Lynch did make the statements alleged and that these statements did disclose secrets. For example, the jury was instructed that on the §1983 privacy claim "the issue is whether the Defendants intended to violate the Plaintiff's constitutional rights" and that "if you find that the acts of the Defendants were merely negligent and not intentional, then you must return a verdict for the Defendants." (emphasis added) Given this instruction, the jury's verdict in Lynch's favor may mean only that the jury found that Lynch lacked this intent and not that he never made the statements at issue or that the statements did not reveal secrets.[6] And such a finding does not in any way preclude either that Schriber, in contrast to Lynch, had the requisite intent, or that Lynch himself had the somewhat different mental animus needed to establish an Eighth Amendment claim.
 
 
 14
 As a result, although we review a district court's application of the law of the case doctrine for abuse of discretion only, see Williams, 205 F.3d at 34, we conclude that, in the circumstances of this case, the district court abused its discretion in treating the jury's verdict on D'Villa's privacy claims as requiring that summary judgment be granted against her Eighth Amendment claim.
 
 III. CONCLUSION
 
 15
 The judgment of the district court granting summary judgment in favor of defendants Lynch and Schriber and against plaintiff D'Villa's Eighth Amendment claim is VACATED, and the case is REMANDED to the district court for further proceedings not inconsistent with this order. Finally, the district court's denial of D'Villa's application for costs and attorneys' fees is VACATED, on the ground that the determination of whether or not D'Villa is a prevailing party cannot yet be made.
 
 
 
 NOTES:
 
 
 *
 The Honorable Janet Bond Arterton, United States District Judge for the District of Connecticut, sitting by designation.
 
 
 [1]
 We note that our official caption misspells D'Villa's name "Devilla."
 
 
 [2]
 In April 1995, during the course of the proceedings in her case, D'Villa died of AIDS, and her executor, the Reverend Wayne Powell, was substituted as plaintiff. In keeping with our practice in our earlier decisions in this case, we nevertheless continue throughout this order to refer to plaintiff as D'Villa.
 
 
 [3]
 We note that our official caption mis-spells Schriber's name "Schriver."
 
 
 [4]
 The § 2782(3) state claim against Schriber was dismissed by the magistrate judge without an express explanation, and is not before us on this appeal.
 
 
 [5]
 We note, furthermore, that the jury's verdict on the § 2782(3) medical disclosure claim is straightforwardly not inconsistent with D'Villa's Eighth Amendment claim. Section 2782(3) applies only to statements about a person's AIDS-HIV condition, so that the jury's verdict in favor of Lynch says nothing about Lynch's statements concerning D'Villa's transsexualism. A reasonable jury could have found that the statements about HIV and AIDS did not disclose secrets whereas the statement about transsexualism did. The record reveals that D'Villa needed regular medical treatment for AIDS, which might have made it difficult to conceal her AIDS-HIV condition but would not have exposed her transsexualism to public view; and the record also reveals that although (after filing her lawsuit) D'Villa revealed her AIDS on the Phil Donahue television program, she did not reveal her transsexualism.
 
 
 [6]
 Furthermore, the verdict in Lynch's favor on the § 2782(3) claim is also consistent, see footnote 5, supra, with a finding that Lynch revealed D'Villa's secret transsexualism.