**Howard SCHWARTZ, Plaintiff,**

v.

**Alex CHAN, Defendant.**

**Alex Chan, Third–Party Plaintiff,**

v.

**Midlantic Process, Inc., Third–Party Defendant.**

**No. CV 97–2833(ADS).**

United States District Court, E.D. New York.

May 7, 2001.

Howard Schwartz, Patchogue, NY, Plaintiff Pro Se.

Law Offices of Michael V. Devine by Michael V. Devine, Port Jefferson, NY, for Plaintiff.

Smith & Banks by Donald B. Smith, Garden City, NY, for the Defendant and Third Party Plaintiff.

Joseph Sferrazza, Edward P. Frey, Melville, NY, for Third Party Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

### I. BACKGROUND

On May 19, 1997, Howard Schwartz ("Schwartz" or the "plaintiff") initiated this action by filing a complaint, in which he alleged, among other things, deceptive trade practices and negligent and intentional infliction of emotional distress by FCC National Bank, Midlantic Process, Inc., Alex Chan, and Upton, Cohen & Slamowitz. On March 8, 1998, Schwartz withdrew the action against defendants FCC National Bank, Midlantic Process, Inc., and Upton, Cohen & Slamowitz, pursuant to a settlement agreement he reached with those parties. Alex Chan ("Chan" or the "defendant") became the only remaining defendant. Chan failed to appear in the action, and on April 1, 1998, a default judgment was entered against him in the amount of $490,665.50.

On October 9, 1998, this Court vacated the default judgment against Chan, crediting the defendant's statement that he had not been properly served with the summons and complaint. On August 13, 1999, during his sworn deposition, Chan testified that he actually had been served with a copy of the summons and complaint five days after the action had been filed with this Court. Accordingly, on October 6, 1999, the Court reinstated the default judgment against Chan, holding that he had committed a "fraud upon the Court and in fact willfully defaulted" in this action (*see* Order, dated October 6, 1999). The Court referred this matter to United States Magistrate Judge Arlene Rosario Lindsay for a report recommending the appropriate amount of damages and attorney's fees to be awarded to Schwartz.

On July 7, 2000, Judge Lindsay issued a Report and Recommendation, advising that the Court award the plaintiff: (1) the sum of $7,500 in compensatory damages for the emotional distress he allegedly suffered; (2) the sum of $50 in actual damages pursuant to section 349 of the New York General Business Law ("G.B.L."); (3) the sum of $3,500 in attorney's fees for the services of Michael V. Devine, Esq. ("Devine"); (4) the sum of $3,375 in attor-

ney's fees for the plaintiff's representation of himself; and (5) the sum of $10,000 in punitive damages.

On July 25, 2000, Schwartz, a non-practicing attorney who represented himself during part of the litigation, filed objections to the report and recommendation that are presently before the Court. Schwartz argues that Judge Lindsay erred in finding that Devine entered the case after the first default was vacated, because Devine began his representation of Schwartz "shortly after the first default was entered" (*see* Schwartz's Objections, p. 1). The plaintiff further asserts that the report and recommendation fail to account for the hours Devine spent: (1) trying to establish that Chan lived in New York and only maintained a post office box in New Jersey; (2) placing liens on the defendant's assets; (3) writing the affirmation and memorandum of law in opposition to Chan's motion to vacate the default judgment; (4) appearing in court; (5) and conferring with the plaintiff. Schwartz also contends that the amount of attorney's fees recommended by Judge Lindsay do not reflect the bad faith of Chan, who purposely lied to the Court. The plaintiff further maintains that the magistrate's report punishes Devine for not keeping contemporaneous time records. Lastly, the plaintiff argues that the law of the case should apply to the vacated judgment, and that this Court should therefore reject Judge Lindsay's recommendation on damages.

Devine filed his objections to the report and recommendation on July 28, 2000, and those objections are presently being considered by the Court as well. Counsel only objects to the amount of attorney's fees Judge Lindsay recommends awarding for his representation of the plaintiff. Devine states that he has represented Schwartz since May 1998, when he was initially retained to assist the plaintiff in enforcing the judgment he had secured against Chan. Devine alleges that he spent time perfecting the judgment and serving restraining notices on the banks that held Chan's assets. Counsel further contends that he prepared papers in opposition to Chan's motion to vacate the default judgment, and that preparation allegedly required "considerable time, research, conversations and consultations with the Plaintiff" (Devine's Objections ¶ 4).

Devine also claims that after the Court vacated the default judgment, he participated in negotiations, conferences, court appearances, and depositions. Counsel argues that this Court should award him fees that are equal to the fees Chan paid his own attorneys. In support of this request, Devine claims that Judge Lindsay's recommended award rewards Chan's perjury. Devine alleges that after the first default judgment was awarded and prior to Chan's perjury, Schwartz had been awarded a judgment in excess of the sum of $490,000. Devine argues that now, after the second default judgment has been entered, and after Chan lied to the Court, Judge Lindsay recommends awarding the plaintiff a total sum of $24,425. Devine contends that the Court should not permit this disparity to exist and, therefore, should award attorney's fees that are equal to the fees Chan paid his own attorneys.

Devine also supports his objection to the amount of attorney's fees recommended by Judge Lindsay by referring to a comment allegedly made by this Court during a conference, namely the statement, " 'We will get you paid' " (Objections ¶ 6). Devine further explains that he was not billing Schwartz hourly, but rather based on a contingent retainer. As such, Devine argues that his records "do not conform to what the Court would like, relative to billable time" (Objections ¶ 8). Devine con-

tends that Chan should not benefit from the billing arrangement between Devine and Schwartz, when Chan perpetrated a fraud on the Court.

On July 20, 2000, the Court granted Chan an extension to August 1, 2000, to file his objections. On August 7, 2000, Chan requested a second extension, which the Court denied. Presently before the Court are the report and recommendation by Judge Lindsay and objections thereto filed only by the plaintiff and his attorney.

## II. *DISCUSSION*

Rule 72 of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provides the standard for district court review of a federal magistrate judge's order. For dispositive matters, the district court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The court shall make a *de novo* determination of those portions of the report to which objections are made. *See* 28 U.S.C. § 636(b)(1); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997). The plaintiff and his attorney have timely filed objections to the following portions of the report: (1) the amount of compensatory and statutory damages; and (2) the amount of attorneys fees awarded to Devine. The Court will review those portions *de novo*.

### A. As to the Compensatory and Statutory Damages Award

Schwartz objects to Judge Lindsay's compensatory damages award, arguing that the magistrate judge should have applied the doctrine of "the law of the case" and recommended awarding the· sum of $490,665.50, which is the sum awarded to the plaintiff pursuant to the initial default judgment. Judge Lindsay rejected this argument in her report and recommendation, finding that the doctrine of law of the case did not apply to this situation, because this Court vacated the original default judgment.

"As most commonly defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). Under the law of the case, a district court cannot reconsider on remand an issue decided by an appellate court. *See Insurance Group Comm. v. Denver & Rio Grande W. R.R.*, 329 U.S. 607, 612, 67 S.Ct. 583, 91 L.Ed. 547 (1947). In contrast, the doctrine permits a district court to revise its rulings "at any time before the entry of final judgment." Fed. R.Civ.P. 54(b); *see Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999).

The purpose of the law of the case is "to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Devilla v. Schriver*, 245 F.3d 192 (2d Cir.2001) (quoting 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4478 at 788). Unlike the doctrines of *res judicata* and collateral estoppel, the law of the case, "'merely expresses the practice of the courts generally to refuse to reopen what has been decided.'" *Devilla*, 245 F.3d 192 (quoting *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)); *see North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir.1995). "It is, 'at best, a discretionary doctrine.'" *Devilla*, 245 F.3d 192 (quoting *United States v. Williams*, 205 F.3d 23, 24 (2d Cir.2000))

■ Furthermore, where a court has vacated an earlier order, the doctrine of the law of the case no longer applies. *See Johnson v. Board of Ed.*, 457 U.S. 52, 53–54, 102 S.Ct. 2223, 72 L.Ed.2d 668 (1982) ("Because we have vacated the Court of Appeals' judgments . . . the doctrine of the law of the case does not constrain either the District Court or . . . the Court of Appeals."); *Dorsey v. Continental Casualty Co.*, 730 F.2d 675, 678 (11th Cir.1984) ("Where a judgment is vacated for a new determination, findings previously made that are integral to that judgment are likewise vacated and are thus not subject to the law of the case doctrine."); *Pahuta v. Massey–Ferguson, Inc.*, 60 F.Supp.2d 74, 77 (W.D.N.Y.1999) (finding that the law of the case did not require the court to use the original's jury's verdict on damages and concluding that a new trial on the issue of damages was warranted, where the Circuit Court vacated the final judgment and set aside the jury's verdict); *Guidice v. BFG Electroplating and Manufacturing Co., Inc.*, 732 F.Supp. 556, 560 (W.D.Pa.1989) (holding that doctrine does not apply where prior orders have been vacated). Indeed, "a vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case." *No East–West Highway Committee, Inc. v. Chandler*, 767 F.2d 21, 24 (1st Cir.1985).

■ Applying these principles to the case at hand, the Court finds that the doctrine of the law of the case does not apply to the Court's first decision on the issue of damages, because the Court vacated the judgment that awarded those damages. *See Pahuta*, 60 F.Supp.2d at 77 (declining to apply the law of the case to award the amount of damages previously awarded in the litigation, where the previous judgment had been vacated by the Court of Appeals). Therefore, the Court is not constrained to award the same amount of damages it ordered in the first default judgment, and the Court adopts Judge Lindsay's recommendation to depart from the amount of the previous award.

Other than arguing that the law of the case should apply, the plaintiff does not object to the amount of damages Judge Lindsay recommends awarding. There being no further objections to the amount of compensatory or statutory damages and no objection to the amount of punitive damages, the Court adopts Judge Lindsay's report and recommendation concerning the amount of damages plaintiff will be awarded.

### B. Attorney's Fees

#### 1. As to the fees awarded to Schwartz

■ Judge Lindsay recommends awarding Schwartz attorney's fees pursuant to the Court's inherent power to punish litigants for bad faith conduct, on the ground that the Court specifically held that "Chan has committed a fraud upon the Court." Applying the lodestar method to the facts of the case, Judge Lindsay advised this Court to award Schwartz a sum of $3,375 as compensation for his work as an attorney. Neither Schwartz nor Devine objects to this finding. Accordingly, this Court adopts the portion of Judge Lindsay's report and recommendation awarding attorney's fees to Schwartz.

#### 2. As to the fees awarded to Devine

■ Pursuant to GBL § 349(h), a "court may award reasonable attorney's fees to a prevailing plaintiff." This Circuit has adopted the contemporaneous time records rule, whereby an attorney who fails to accompany a fee application with contemporaneous time records that specify the date, hours expended and nature of work

performed will be denied the awarding of fees. *See New York State Ass'n for Retarded Children, Inc. v.* Carey, 711 F.2d 1136, 1147 (2d Cir.1983). The New York state courts, on the other hand, prefer that trial courts exercise greater discretion in evaluating fee petitions. *See Riordan v. Nationwide Mutual Fire Ins. Co.,* 977 F.2d 47, 53 (2d Cir.1992) (citing *In re Karp,* 145 A.D.2d 208, 216 537 N.Y.S.2d 510 (1st Dept.1989)). Indeed, the state law substantive right to attorney's fees precludes application of the contemporaneous time records rule. *See Riordan,* 977 F.2d at 53 (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50–2, 111 S.Ct. 2123, 2136–37, 115 L.Ed.2d 27 (1991)). Therefore, under New York law, courts may award attorney's fees based on contemporaneous or reconstructed time records. *See Riordan,* 977 F.2d at 53; *Mt. Airy Ins. Co. v. Town of Orangetown,* 22 F.Supp.2d 57, 59 (S.D.N.Y.1998).

■ New York courts look to a number of factors when evaluating requests for attorney's fees, including the time and skill required in litigating the case, the complexity of issues, the customary fee for the work, and the results achieved. *See Riordan,* 977 F.2d at 54; *Independent Living Aids, Inc. v. Maxi–Aids. Inc.,* 25 F.Supp.2d 127, 132 (E.D.N.Y.1998). Although New York law permits courts to award attorney's fees based on reconstructed time records, the "burden of documenting the amount of an attorneys' fee award falls on the party submitting the award." *Mt. Airy Ins.,* 22 F.Supp.2d at 59 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Moreover, the documentation submitted "must include a 'proper basis for determining how much time was spent on particular claims,'" including a detailed and specific record of the work that was completed. *See Mt. Airy Ins.,* 22 F.Supp.2d at 59

(quoting *Hensley,* 461 U.S. at 436 n. 12, 103 S.Ct. 1933, 76 L.Ed.2d 40).

■ Evaluating Devine's fee application in light of these principles, the Court finds that Devine is entitled to a sum greater than that which is recommended by Judge Lindsay. Her recommendation of the sum of $3500 is based on the incorrect factual conclusion that Devine entered the case after the original default had been vacated. In fact, Devine filed his notice of appearance on September 28, 1998, and simultaneously filed an eight-page memorandum of law in support of Schwartz's previously-submitted affidavit in opposition to Chan's motion to vacate. Thus, Devine performed more than the 20 hours of work Judge Lindsay found he completed.

Devine's continued representation of Schwartz included taking two depositions totaling 50 pages in length, participating in status and settlement conferences, appearing in court on several occasions, composing several letters to the Court, and preparing the motion to reinstate the default judgment. That motion was three pages long and included three exhibits.

Devine submitted a reconstructed time record claiming that he spent 96 hours working on this case. Devine's descriptions of the work he performed for Schwartz are vague at best: preparation of action for submission; miscellaneous phone calls and settlement conference; review documents; motion; phones; research; and court appearance. As Judge Lindsay noted, "[t]hese vague entries do not provide the Court with an adequate description of the work being performed or the complexity thereof." Devine's description of the work he completed makes it difficult for this Court to find that all 96 of his claimed hours were necessary to achieve the result he did.

In addition, the Court notes that the factual and legal issues in this case are not

complex. Indeed, the claims that form the basis of the complaint and motion to vacate Chan's default pertain to the rules of service. In addition, Chan's fraud on the Court was obvious, as he clearly admitted in his deposition that, despite what he had asserted in a sworn affidavit, he received a copy of the complaint five days after it was filed with the Court. Thus, the basis for Devine's motion to reinstate the default judgment was clear. Moreover, the legal issues surrounding default judgments and the vacatur thereof are straightforward. The Court notes that Devine hardly dealt with the substantive aspects of the complaint, because the other defendants settled the case before the litigation reached the merits, and the substantive litigation with Chan consisted of conducting two depositions. Given the absence of complex legal and factual issues in this case, the Court finds that the 96 hours claimed by Devine are unnecessary and excessive.

▬ Based on the Court's familiarity with this case, the nature of the litigation, and the lack of specificity in Devine's invoice, the Court finds that a reasonably experienced attorney in this field could have obtained the results achieved by counsel with 25 hours of work. The Court further finds that an hourly rate of $175 per hour for a sole practitioner is reasonable. *See Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir.1998) (affirming district court's conclusion that $200 per hour was reasonable fee in Eastern District). Accordingly, the Court awards the plaintiff attorney's fees in the sum of $4375 for Devine's representation.

▬ Devine's arguments in support of his claim that he should receive greater attorney's fees do not alter this conclusion. Devine argues that he should be awarded the same fees that Chan paid his own attorneys but does not state what those fees are; does not explain how the Court

should determine what those fees are; and fails to refer to any legal authority that stands for his proposition. Moreover, the Court is aware of no rule that provides for calculating attorney's fees according to the fees an adversary pays his own attorney. In addition, contrary to Devine's argument that Chan should not benefit from the fact that his bills do not contain the detail required by the Court, a court must consider the specificity of counsel's time records when it assesses a claim for attorney's fees. *See Mt. Airy Ins.,* 22 F.Supp.2d at 59. In sum, the Court is not persuaded by Devine's arguments for a fee award greater than the sum of $4375.

### III. *CONCLUSION*

Having reviewed the submissions of the parties, it is hereby

**ORDERED,** that the Report and Recommendation issued by Judge Lindsay is adopted in part and rejected in part; and it is further

**ORDERED,** that the Clerk of the Court is directed to enter a judgment in favor of the plaintiff Schwartz and against the defendant Chan in the amount of $25,300, which figure represents the sum of $7500 in compensatory damages; the sum of $50 in statutory damages; the sum of $10,000 in punitive damages; the sum of $3375 in attorney's fees for Schwartz's representation of himself; and the sum of $4375 in attorney's fees for Devine's representation of Schwartz; and it is further

**ORDERED,** that Chan and Midlantic Process, Inc., the two parties remaining in this action, are directed to report to Magistrate Judge Arlene R. Lindsay forthwith to proceed with discovery.

**SO ORDERED.**