**CONVOLVE, INC., and Massachusetts Institute of Technology, Plaintiffs,**

v.

**COMPAQ COMPUTER CORP. and Seagate Technology, Inc., Defendants.**

No. 00 Civ. 5141 GBD JCF.

United States District Court, S.D. New York.

May 28, 2004.

Kenneth A. Freeling, Debra Brown Steinberg, Cadwalader, Wickersham & Taft, Albert L. Jacobs, Jr., Adam B. Landa, Greenberg Traurig, LLP, New York City, for plaintiffs.

Herbert F. Schwartz, Robert J. Goldman, Duane–David Hough, Robert W. Morris, Fish & Neave, New York City, Terrence P. McMahon, Steven J. Akerley, McDermott, Will & Emery, Palo Alto, CA, Michael Sommer, Ann E. Schofield, McDermott, Will & Emery, LLC, New York City, for defendants.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

The plaintiffs in this action have sued the defendants, Seagate Technology, Inc. ("Seagate") and Compaq Computer Corp. ("Compaq"), alleging, among other claims, willful patent infringement of the plaintiffs' computer disk drive technology. The defendants, in turn, assert that they acted in good faith because they relied on the advice of counsel. They concede that by relying on an advice-of-counsel defense, they have waived the attorney-client privilege as well as work product immunity with respect to communications with and documents created by opinion counsel. At issue now are two questions that have split the courts: to what extent does reliance on advice of counsel waive the attorney-client privilege for communications with trial counsel, and does any such waiver extend to trial counsel's work product?

*Background*

On July 13, 2000, the plaintiffs initiated this lawsuit alleging, among other claims, theft of trade secrets and patent infringement in connection with the plaintiffs' "Input Shaping" and "Quick and Quiet" technologies. The "Input Shaping" technology permits machines to operate more quickly and quietly by reducing vibrations associated with machine movement. (Amended Complaint ("Am.Compl."), ¶ 3). The "Quick and Quiet" application is a computer control panel feature that permits users to select between the fastest or quietest performance for computer disk drives. (Am. Compl., ¶ 6).

The "Input Shaping" technology is the subject of United States patent numbers 4,916,635 (the " '635 patent") and 5,638,267 (the " '267 patent"), which were issued to the plaintiffs on April 10, 1990, and June 10, 1997 respectively. (Am.Compl., ¶¶ 3, 109). A third patent, United States patent number 6,314,473 (the " '473 patent"), was issued on November 6, 2001, and covered the plaintiffs' "Quick and Quiet" technology. (Am.Compl., ¶¶ 6, 116). On January 25, 2002, the plaintiffs filed an Amended Complaint, adding the '473 patent to their patent infringement claim (Am.Compl., ¶¶ 115–120), and seeking treble damages on the ground that the defendants' infringement of the '635 and '267 patents was "knowing, willful and deliberate." (Am.Compl., ¶ 114).

Seagate initially retained the law firm of Orrick, Herrington & Sutliffe to serve as its trial counsel but later switched to the firm of McDermott, Will & Emery. Fish & Neave serves as trial counsel for Compaq.

After the filing of the original complaint, Seagate retained Gerald T. Sekimura, who was then with the law firm of Limbach & Limbach L.L.P., to provide an opinion as to the legality of its conduct. Mr. Sekimura issued three written opinions. The first

opinion, dated July 24, 2000 (the "7/24/00 Opinion"), concerned the '635 and '267 patents and International Application WO 99/45535 (the " '535 International Application"), which relates to technology similar to that covered by the '473 patent (Am.Compl., ¶ 4). The report reviewed the computer disk drive technology used in Seagate's products and the plaintiffs' patent claims and concluded that many of the plaintiffs' claims were invalid and that the plaintiffs had failed to show infringement by Seagate's existing products. (7/24/00 Opinion at 1–21). The report noted that further analysis was needed because only 186 of the over 340 claims made by the plaintiffs had been reviewed (7/24/00 Opinion at 1), and it noted that the '535 International Application analyzed in the report "is *not* an issued patent." (7/24/00 Opinion at 16).

On December 29, 2000, Mr. Sekimura forwarded to Seagate an "Updated Report Re Convolve Patents" (the "12/29/00 Opinion") concerning the same patents and application as the 7/24/00 Opinion. The 12/29/00 Opinion drew the same conclusions as the 7/24/00 Opinion but added, with respect to the '267 patent, that many of the plaintiffs' claims were not only invalid but may be unenforceable due to incomplete disclosures of prior art by the inventors. (12/29/00 Opinion at 2, 29). The report also recommended that further review of the '535 International Application be postponed until the U.S. Patent and Trademark Office evaluated the plaintiffs' claims to determine whether to issue a patent. (12/29/00 Opinion at 2). The report noted again that only 186 claims had been reviewed, and that "[f]urther supplementation may be desired of this study." (12/29/00 Opinion at 1).

Finally, on February 21, 2003, Mr. Sekimura, now with the law firm of Gray Cary, provided Seagate with an opinion (the "2/21/03 Opinion") concerning the '473 patent. The report reviewed the eight "independent" and seven "dependent" claims made by the plaintiffs, and drew various conclusions regarding Seagate's non-infringement of the '473 patent and the invalidity of the

plaintiffs' claims. (2/21/03 Opinion at 13–14, 32–35).

In late 2001 or early 2002, Compaq retained Michael S. Dowler of the law firm of Howrey Simon Arnold & White to prepare an opinion concerning the plaintiffs' patents. (Letter from Special Master Pasquale A. Razzano dated Sept. 18, 2003 (the "9/18/03 Order") at 2). Compaq thereafter instructed Mr. Dowler to stop work on his report after it learned of the Seagate opinions obtained from Mr. Sekimura. (9/18/03 Order at 2). Before that decision was made, however, Mr. Dowler forwarded to Compaq an email "draft opinion" or "template" that analyzed the "disclosures and prosecution histories" relating to the '635, '267, and '473 patents. (9/18/03 Order at 3). The "draft opinion" contained a "Conclusion" section, which stated, "Compaq ____'s do not infringe any of the system claims. . . ." (9/18/03 Order at 3).

On July 27, 2001, the Honorable John S. Martin, to whom the case was then assigned,[1] appointed Pasquale A. Razzano to serve as a Special Master to hear and determine all discovery disputes relating to trade secret information. Pursuant to a Scheduling Order issued by Mr. Razzano, both Seagate and Compaq notified the plaintiffs in early 2003 of their intent to rely on the 7/24/00, 12/29/00, and 2/21/03 Opinions from Mr. Sekimura as the basis for their advice-of-counsel defense to the claim of willful patent infringement. (Letter from Pasquale A. Razzano dated September 23, 2003 (the "9/23/03 Order") at 2–3). The defendants disclosed the three opinions to the plaintiffs, and made Mr. Sekimura available for a deposition. (Defendant Compaq Computer Corporation's Opposition to Plaintiff Convolve, Inc.'s July 10, 2003 Motion to Compel Discovery from Compaq ("Compaq Opp.") at 1–2). All "correspondences and work product (regardless of whether it was or was not communicated to Seagate)" were produced from Mr. Sekimura's files, as were communications with Mr. Sekimura in Seagate's files. (Seagate Technology LLC's Opposition to Convolve, Inc.'s Motion to Compel Discovery from Seagate ("Seagate Opp.") at 3). Moreover, two of Compaq's in-house attorneys were deposed

---

1. This case was re-assigned to the Honorable George B. Daniels on July 23, 2003.

"on the subject of opinions of counsel," (Compaq Opp. at 2).

On May 23, 2003, the plaintiffs moved to compel discovery relating to Mr. Dowler from Compaq. In an order dated September 18, 2003, the Special Master held that by asserting the advice-of-counsel defense, Compaq had waived the attorney-client and work product privileges with respect to "all opinions of counsel on the same subject." (9/18/03 Order at 5). The Special Master ordered that Compaq produce the "draft" opinion from Mr. Dowler and "all other documents relating thereto," and he ordered Mr. Dowler to appear for a deposition. (9/18/03 Order at 6–7). The Special Master excluded Compaq's trial counsel, Fish & Neave, from his order, noting that trial counsel was the subject of a separate motion. (9/18/03 Order at 5 n. 3).

On July 10, 2003, the plaintiffs again moved to compel discovery from Compaq with regard to the "work of Compaq and its various counsel, and communications among Compaq and between Compaq and others, including its counsel, which evidence relates to the infringement, validity and enforceability of the patents-in-suit." (Convolve, Inc.'s Memorandum of Points and Authorities in Support of its Motion to Compel Discovery from Compaq ("Pl. Compaq Memo.") at 2). In an order dated September 23, 2003, the Special Master ruled that Compaq must produce "all opinions communicated to it ... by any counsel, including trial counsel, up to the date on which [Compaq] concluded [it] would rely on the Seagate opinions." (9/23/03 Order at 13) (emphasis omitted). Additionally, the Special Master ordered production of "all documents relied on or considered by such counsel ... in connection with any opinions or information communicated ·to Compaq...." (9/23/03 Order at 13). For the post-reliance period, the Special Master ordered that "communications between trial counsel [and Compaq]" be produced *in camera* for disclosure of "contradictory opinions of trial counsel, or those casting doubt on earlier opinions." (9/23/03 Order at 14) (emphasis omitted).

By letter dated October 1, 2003, Compaq moved for clarification of the Special Master's order, requesting a ruling on the "scope of 'opinion' discovery contemplated by the Order." (Compaq Letter to Pasquale A. Razzano dated Oct. 1, 2003 ("Compaq 10/1/03 Letter") at 3). Compaq asserted that the term "opinion" should be construed to mean "a 'formal' opinion, whether written or oral, that was provided to a client in response to a request from the client for an opinion." (Compaq 10/1/03 Letter at 1).

On October 1, 2003, the plaintiffs moved to compel discovery from Seagate.[2] Contending that such discovery should extend beyond the "opinions" referenced in the 9/23/03 Order (Convolve, Inc.'s Memorandum of Points and Authorities in Support of its Motion to Compel Discovery from Seagate ("Pl. Seagate Memo.") at 2 n. 1), the plaintiffs sought to obtain

internal communications on the same subjects as the formal [Sekimura] opinions, communications between Seagate and any attorneys on the same subjects as the formal opinions, documents reflecting outside counsel's opinion as to the same subjects of the formal opinions, documents reviewed or considered, or forming the basis for outside counsel's opinion as to the subject matter of the formal opinions, and documents reflecting when oral communications concerning the subjects of the opinions occurred between Compaq and outside counsel.

(Pl. Seagate Memo. at 2) (emphasis omitted).

In a letter to the Special Master dated October 10, 2003, the plaintiffs asserted that a conflict of interest may exist with respect to Mr. Razzano, arising from the brief representation by Mr. Razzano's law firm, Fitpatrick, Cella, Harper & Scinto, of a defendant in another patent infringement action. (Plaintiffs' Letter to Pasquale A. Razzano dated Oct. 10, 2003 ("Pl. 10/10/03 Letter")).[3]

---

2. While it appears from the record that some motions were made by plaintiff Convolve, Inc. ("Convolve"), and others by both plaintiffs, I will refer to all of the motions as "the plaintiffs' motions," as my ruling will apply to both plaintiffs in any event.

3. A decision in the other action, *Michlin v. Canon, Inc.*, 208 F.R.D. 172 (E.D.Mich.2002), also

While expressing disagreement with the plaintiffs' position, the Special Master nevertheless recused himself on October 14, 2003. (Razzano 10/14/03 Letter at 3).

By letter dated October 24, 2003, the plaintiffs requested that the Honorable George B. Daniels set a pre-motion conference with respect to several outstanding discovery disputes, including the parties' disagreements over the Special Master's 9/23/03 Order. (Plaintiffs' Letter to Hon. George B. Daniels dated Oct. 24, 2003 ("Pl. 10/24/03 Letter") at 1, 4). In their letter, the plaintiffs moved for modification of the order such that the discovery ordered from Compaq not be "limited to 'opinions' and their supporting documents, but extend[ ] to other evidence concerning the subject matter of the opinions, i.e., validity, infringement or enforceability of the patents in suit." (Pl. 10/24/03 Letter at 4).

On December 9, 2003, Judge Daniels referred the case to me for pre-trial supervision, including resolution of the pending disputes.

*Discussion*

A. *Legal Standards*

■ Under 35 U.S.C. § 284, a trial court may, at its discretion, increase the damages awarded for patent infringement to a maximum of three times the compensatory award assessed by a jury. Although not mandated by statute, such enhanced damages have been approved "where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed.Cir.1992) (citations omitted); *accord Thorn EMI North America, Inc. v. Micron Technology, Inc.*, 837 F.Supp. 616, 620 (D.Del.1993) (citing *Mathis v. Spears*, 857 F.2d 749, 754 (Fed.Cir.1988)).

■ One important factor in determining the willfulness of an infringer's actions is whether legal advice was sought before the infringement occurred. *See Variable-Par-*

*ameter Fixture Development Corp. v. Morpheus Lights, Inc.*, No. 90 Civ. 5593, 1994 WL 97572, at *1 (S.D.N.Y. March 18, 1994) ("[A] potential infringer having actual notice of another's patent has an affirmative duty of due care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe.") (quoting *Minnesota Mining and Manufacturing Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580 (Fed.Cir.1992)); *Underwater Devices Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1389–90 (Fed.Cir. 1983). Where such advice is obtained, reliance on the advice must be reasonable; the central focus in a determination of willfulness is the infringer's state of mind. *See Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir.1992); *Thorn*, 837 F.Supp. at 620.

■ Where a party in a patent infringement action asserts the advice of counsel as a defense to a claim of willful infringement, it waives the attorney-client privilege as to the subject matter of the advice received. *See, e.g., Carl Zeiss Jena GmbH v. Bio–Rad Laboratories Inc.*, No. 98 Civ. 8012, 2000 WL 1006371, at *1 (S.D.N.Y. July 19, 2000); *Saint–Gobain/Norton Industrial Ceramics Corp. v. General Electric Co.*, 884 F.Supp. 31, 33 (D.Mass.1995). This rule follows from the general principle that if privileged communications are placed "in issue" by virtue of claims or defenses in litigation, then a "broad[ ] subject matter waiver [of the privilege] is effected." *Oxyn Telecommunications, Inc. v. Onse Telecom*, No. 01 Civ. 1012, 2003 WL 660848, at *6 (S.D.N.Y. Feb. 27, 2003); *accord In re Grand Jury Proceedings*, 219 F.3d 175, 183 & n. 4 (2d Cir.2000) (citing 8 J. Wigmore, Evidence § 2327 (McNaughton ed., 1961)). The rule seeks to promote fairness in patent litigation, since "it would be fundamentally unfair to allow a party to disclose opinions which support its position, and simultaneously conceal those

---

addressed the scope of a waiver of the privilege resulting from assertion of the advice-of-counsel defense to a claim of willful patent infringement. The plaintiffs noted that Mr. Razzano's firm had represented one of the defendants, Hewlett Packard, which later merged with Compaq. (Pl.

10/10/03 Letter). The overlap in time between Mr. Razzano's role as a Special Master in this case and his firm's representation of Compaq in *Michlin* was 19 days. (Letter of Pasquale A. Razzano to Hon. George B. Daniels dated Oct. 14, 2003 ("Razzano 10/14/03 Letter") at 2).

which are adverse." *Saint–Gobain*, 884 F.Supp. at 33.

As codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, the work product doctrine requires that documents "prepared in anticipation of litigation or for trial" be produced only upon a showing of: (1) "substantial need" by the discovering party and (2) "undue hardship" if the documents must be obtained by other means. Even where the required showing is made, Rule 26(b)(3) mandates that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney." Thus, such "mental impression" or "opinion" work product is accorded an even greater level of protection. *See United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir.1998); *Lugosch v. Congel*, 218 F.R.D. 41, 48 (N.D.N.Y.2003).

### B. *Seagate*

In this case, Seagate has asserted, as a defense to the plaintiffs' claim of willful patent infringement and enhanced damages under 35 U.S.C. § 284, that it relied on the 7/24/00, 12/29/00, and 2/21/03 Opinions from Mr. Sekimura. Seagate concedes that by asserting this defense, it has waived the attorney-client privilege and work product immunity with respect to Mr. Sekimura. (Seagate Opp. at 3). The dispute concerns the extent of the waiver with respect to attorneys other than Mr. Sekimura.

The plaintiffs contend that Seagate has waived both protections with respect to "all documents and other discovery that are relevant to the subject matter of [the Sekimura] opinions." (Pl. Seagate Memo. at 1). They seek both privileged communications and attorney work product relating to the same subject matter with regard to "any attorneys" retained by Seagate. (Pl. Seagate Memo. at 2). In light of the "heightened protections for privileged information of trial counsel," the plaintiffs request that "documents and things which post-date Seagate's reliance on the [Sekimura] opinions" be produced *in camera* so that only "evidence contradicting or casting doubt upon

the [Sekimura] opinions" can be selected for disclosure. (Pl. Seagate Memo. at 2, 15).

Construing the plaintiffs' motion as seeking "only the privileged communications between trial counsel and Seagate and the work product of Seagate's trial counsel" (Seagate Opp. at 3), Seagate contends that it has not waived any privilege with respect to trial counsel because it "never requested and never received reliance opinions from its trial counsel." (Seagate Opp. at 9). Seagate further contends that it "retained opinion counsel prior to litigation and has maintained its reliance on that counsel," and that opinion counsel was neither selected nor influenced by Seagate's trial counsel. (Seagate Opp. at 9–10). Seagate argues that the plaintiffs' motion, if granted, would have a chilling effect on communications with its trial counsel (Seagate Opp. at 2), and that a bright line should be drawn such that unless a formal opinion is issued by trial counsel, communications with that counsel should be absolutely protected. (Tr. at 51–52).[4]

#### 1. *Attorney–Client Privilege*

As discussed above, a party that asserts the advice of counsel defense to a claim of willful patent infringement waives the attorney-client privilege as to the subject matter of the advice disclosed. This waiver extends not only to the attorney who rendered the opinion creating the waiver, but also to all other attorneys who may have advised or communicated with the client on the same subject matter. *AKEVA L.L.C. v. Mizuno Corp.*, 243 F.Supp.2d 418, 423 (M.D.N.C. 2003) ("Since the waiver encompassed the subject matter of advice, that means that all opinions received by the client must be revealed, even those opinions the client receives from attorneys other than opinion counsel."); *accord Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 217 (N.D.Ill.2001); *D.O.T. Connectors, Inc. v. J.B. Nottingham & Co.*, No. 4:99 Civ. 311, 2001 WL 34104928, at *2 (N.D.Fla. Jan. 22, 2001); *Carl Zeiss*, 2000 WL 1006371, at *1; *Fonar Corp. v. Johnson and Johnson*, 227 U.S.P.Q. 886, 887 (D.Mass.1985). As explained by the Court in *AKEVA:*

---

4. "Tr." refers to the transcript of oral argument conducted on January 20, 2004.

Practical reasons exist for this rule. The exercise of due care requires a potential infringer to act reasonably. The infringer may not pick and choose between what opinions will be relied upon and which will be discarded. The totality of the circumstances test requires that all knowledge gained by the infringer relating to the advice subject matter must be revealed so that the factfinder can make its own determination as to whether the reliance was reasonable.

243 F.Supp.2d at 423.

Here, Seagate has placed at issue the advice of its opinion counsel, Mr. Sekimura, and it has produced the otherwise privileged opinions communicated to Seagate. Seagate has therefore waived the privilege with respect to all communications not only with Mr. Sekimura, but also with its other attorneys, including trial counsel, concerning the subject matter of Mr. Sekimura's advice. Although Seagate contends that it did not receive any "reliance opinions" from its trial counsel, this representation does not foreclose the possibility that trial counsel communicated informal opinions or oral advice. The subject matter waiver arising from the advice-of-counsel defense clearly extends to all such "communications," not just formal or written opinions. *See Beneficial,* 205 F.R.D. at 217 ("[A] party must produce not only other communications and opinions of the same attorney, but also privileged information from other counsel involving the same subject."); *D.O.T.,* 2001 WL 34104928, at *2 ("The waiver extends to communications between [the defendant] and any attorney, including trial counsel. . . ."); *Micron Separations, Inc. v. Pall Corp.,* 159 F.R.D. 361, 363 (D.Mass.1995) (the advice-of-counsel defense effects a "'subject matter' waiver—i.e., a waiver of all communications on the same subject matter").

With respect to the temporal scope of Seagate's waiver, it is well established that a potential infringer having "actual notice" of another's patent has a duty to exercise reasonable care, which normally includes obtaining "competent legal advice." *Minnesota Mining,* 976 F.2d at 1580. Since infringement is a continuing activity, this requirement of reasonable care is a continuing duty, meaning that the nature of any legal advice sought remains relevant "during the entire course of the alleged infringement." *AKEVA,* 243 F.Supp.2d at 423; *accord Micron,* 159 F.R.D. at 363 ("[W]hen a party is charged with wilful infringement, what is relevant is that party's state of mind during the time when it is taking actions which allegedly infringe the patent."). Accordingly, a waiver of the privilege resulting from the advice-of-counsel defense extends throughout the period of infringement, "including up through trial." *AKEVA,* 243 F.Supp.2d at 423; *accord D.O.T.,* 2001 WL 34104928, at *2 & n. 4.[5]

Here, the plaintiffs allege that Seagate learned of the '635 and '267 patents in 1995 and 1997 respectively (Pl. Seagate Memo. at 3; Am. Compl., ¶¶ 22, 34), and that they notified Seagate of its alleged infringement of the '473 patent shortly after the patent issued in November 2001. (Tr. at 72). It is undisputed that Seagate's alleged infringement—namely, its manufacture of computer disk drives using technology that was allegedly stolen from the plaintiffs—is continuing. (Am.Compl., ¶¶ 58–62, 111, 117). Accordingly, Seagate's waiver of the privilege resulting from its advice-of-counsel defense should extend from the time it became aware of the plaintiffs' patents until such time in the future that Seagate ceases its alleged infringement. *AKEVA,* 243 F.Supp.2d at 423; *Dunhall,* 994 F.Supp. at 1206 (privilege is waived for the "entire time period of the alleged infringement").

Next, the plaintiffs propose a subject matter limitation of Seagate's waiver such that discovery regarding trial counsel for the

**5.** While some cases, most notably *Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.,* 994 F.Supp. 1202 (C.D.Cal.1998), have limited the waiver of the privilege with respect to *trial counsel* to the period prior to commencement of suit, such a filing date cutoff seems inconsistent with the continuing duty of care imposed in ongoing infringement cases. The filing date rule is particularly unworkable for this case, since the opinions that triggered the waiver were not obtained until after the suit commenced, meaning that evaluating the effect of later-received contrary opinions on Seagate's state of mind would necessarily implicate the post-filing period.

"post-reliance" period would be limited to "such evidence contradicting or casting doubt upon the [Sekimura] opinions," selected after *in camera* review. (Pl. Seagate Memo. at 15). This proposal mirrors the approach taken by the Special Master with respect to Compaq in his 9/23/03 Order. (9/23/03 Order at 14). While there is some case law supporting the "contradictory opinions" approach, *see, e.g., Beneficial,* 205 F.R.D. at 218; *Thermos Co. v. Starbucks Corp.,* No. 96 Civ. 3833, 1998 WL 781120, at *4–5 (N.D.Ill. Nov. 3, 1998), such a limitation does not comport with the nature of Seagate's "subject matter waiver," which extends to the entire subject matter of Mr. Sekimura's opinions—infringement, validity, and enforcement of the patents at issue. The waiver would therefore encompass information that is both consistent with and contrary to Mr. Sekimura's advice. *See D.O.T.,* 2001 WL 34104928, at *2; *Dunhall,* 994 F.Supp. at 1205. Moreover, a waiver that encompasses both negative and positive information would not cause unfairness to Seagate, since the additional disclosure of favorable evidence would only bolster its advice-of-counsel defense.

Nevertheless, care should be taken to minimize the disclosure of communications pertaining to trial or litigation strategy. To be sure, trial counsel's advice that undermines the reasonableness of the client's reliance on advice of opinion counsel must be disclosed even if it is communicated in the context of trial preparation. But, at the same time, trial counsel will surely address with the client trial strategy concerning validity, infringement, and enforcement in ways that do not implicate the advice-of-counsel defense. Therefore, to the extent that Seagate wishes to withhold or redact documents that would reveal trial strategy or planning, it shall submit those documents for my *in camera* review.

For the foregoing reasons, the plaintiffs' motion with respect to Seagate's waiver of the attorney-client privilege is granted. Seagate shall produce all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, including trial counsel, with respect to the subject matter of Mr. Sekimura's opinions, i.e., the infringement, validity, and enforcement of the '635, '267, and '473 patents.[6] The time period of the waiver runs from the time Seagate became aware of the patents at issue and continues until such time as Seagate's alleged infringement ends. Any communications between Seagate and its trial counsel *concerning the subject matter of Mr. Sekimura's opinions* that also relate to trial strategy or planning shall be submitted for my review.

### 2. *Work Product Immunity*

■ While it is well established that assertion of the advice-of-counsel defense in patent litigation creates a subject matter waiver with respect to all privileged communications, the case law is inconsistent as to whether the waiver extends to an attorney's work product. The central split in authority pertains to the issue of "uncommunicated work product," that is, work product that is not disclosed to the client.[7] On one hand, the cases that decline to order disclosure of attorney work product reason that since the primary focus in an advice-of-counsel defense is the client's state of mind, an attorney's work product is not relevant unless it is communicated to the client. *See, e.g., Nitinol Medical Technologies, Inc. v. AGA Medical Corp.,* 135 F.Supp.2d 212, 218 (D.Mass. 2000); *Thorn,* 837 F.Supp. at 622. Cases to the contrary reason that because the standards for "admissibility and discoverability" differ, all evidence "reasonably calculated to lead to the discovery of admissible evidence" should be disclosed, including circumstantial

---

**6.** To the extent that the plaintiffs' request for "internal communications on the same subjects as the [Sekimura] opinions" (Pl. Seagate Memo. at 2) refers to communications between Seagate and its in-house counsel, that request would be covered by this order. If "internal communications" relates to individuals within Seagate who are not attorneys, such communications are not subject to the attorney-client privilege and should be disclosed in any event.

**7.** As noted by the Court in *Dunhall,* uncommunicated work product is in effect the equivalent of work product generally, since "communicated work product" would be covered by the attorney-client privilege. 994 F.Supp. at 1204.

evidence in an attorney's files of information that might have been communicated to the client. *Dunhall*, 994 F.Supp. at 1204 (citing Fed.R.Civ.P. 26(b)(1)). Such evidence could include information shedding light on additional oral advice that may have been given, *Matsushita Electronics Corp. v. Loral Corp.*, No. 92 Civ. 5461, 1995 WL 527640, at *2 (S.D.N.Y. Sept. 7, 1995), or unfavorable information where the inference can be drawn that it was conveyed to the client, *Electro Scientific Industries, Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 545 (N.D.Cal. 1997).

In cases where separate and independent opinion counsel render the opinion underlying the advice-of-counsel defense, some courts have ordered work product disclosure only from that counsel, absent special circumstances. As explained by the court in *AKEVA*, "courts have expressed a concern about allowing a procedure that tempts attorneys and clients to cook up an advice opinion based mainly on its palatability for the trial while withholding unfavorable information." 243 F.Supp.2d at 424; *accord Dunhall*, 994 F.Supp. at 1204 ("A narrowly circumscribed waiver, at the discovery stage, creates a danger of a defendant utilizing favorable opinion letters while allowing unfavorable evidence to languish in their attorney's files under the protection of the work product doctrine."). Nevertheless, the *AKEVA* court declined to order full work product disclosure for trial counsel because the defendants "[were] not asserting reliance on the opinion of trial attorneys, but only the opinion of an attorney separately retained for his opinion." 243 F.Supp.2d at 422. The Court explained:

> [T]he broad waiver rule requiring full disclosure of documents, even if they were not given to the client, is best suited to the situation where the opinion counsel is trial counsel. In that situation, the opinion counsel has a dual role in advising the client and, thus, there is a greater need to make sure the opinion is not tainted by

bias or other influences.... To the extent that a broader waiver of work product protection might also disclose the trial attorney has been orchestrating a sham opinion with opinion counsel, the Court finds that possibility to be sufficiently remote and more difficult to orchestrate.

*Id.* at 424.

The circumstances of this case are similar to those of *AKEVA.* Here, Seagate has separately retained independent opinion counsel to render advice on which Seagate relies as the basis for its advice-of-counsel defense. Seagate contends—and the plaintiffs do not dispute—that its trial counsel played no role in selecting Seagate's opinion counsel and did not influence the drafting of Mr. Sekimura's opinions. (Seagate Opp. at 9–10).[8] Where there is no evidence that trial and opinion counsel have conspired to create a "sham opinion" to gain an unfair advantage in litigation, production of the un-communicated work product of trial counsel is unwarranted. *Compare AKEVA*, 243 F.Supp.2d at 424 (ordering full disclosure of privileged communications but not work product of trial counsel) *with K.W. Muth Co. v. Bing–Lear Manufacturing Group, L.L.C.*, 219 F.R.D. 554, 577 (E.D.Mich.2003) (work product discoverable where defendant was "less than forthright" in disclosing oral advice of trial counsel); *Electro Scientific*, 175 F.R.D. at 540, 545 (work product waived where facts showed substantial communication between trial and opinion counsel).

The rationales advanced for a broader waiver of the work product immunity do not withstand scrutiny, at least in these circumstances. For example, the observation that the standard for discovery is broader than that for admissibility, *see Dunhall*, 994 F.Supp. at 1204, is accurate but immaterial, since the work product doctrine is specifically intended to create an immunity from *discovery.* Likewise, the contention that uncommunicated work product must be disclosed for fear that witnesses are not can-

8. The plaintiffs' do contend that there is a connection between trial and opinion counsel as shown by the fact that certain documents drafted by Seagate's trial counsel were later provided to opinion counsel. (Pl. Seagate Memo. at 8–9 & n. 5). But those documents, along with others drafted by Convolve's counsel, were provided to opinion counsel as part of the record of the litigation and do not demonstrate an effort by Seagate's trial counsel to influence opinion counsel.

did about what was communicated, *see Electro Scientific*, 175 F.R.D. at 545, is an argument that proves too much. Attorney work product could frequently be useful in challenging the credibility of a witness, but the mere suspicion that that might be the case is an insufficient basis for requiring its disclosure. Finally, while some courts that endorse a waiver of trial counsel's work product nevertheless seek to limit it to work product created before the lawsuit was filed, *see Dunhall*, 994 F.Supp. at 1205–06; *Electro Scientific*, 175 F.R.D. at 546, such a temporal constraint is illogical since a defendant's state of mind remains relevant as long as the defendant continues its alleged infringement.

For these reasons, the plaintiffs' motion to compel discovery withheld on the basis of the work product privilege is denied. Seagate's trial counsel is not obligated to disclose any work product, uncommunicated to Seagate, relating to the subject matter of the opinions issued by Mr. Sekimura.[9] However, the communicated work product of any of Seagate's attorneys is discoverable under Seagate's waiver of the attorney-client privilege. Such communicated work product shall include materials disclosing the fact or substance of Seagate's (or in-house counsel's) communications with any outside counsel; accordingly, this order encompasses the plaintiffs' request for "documents reflecting oral communications ... between [Seagate] and outside counsel" that relate to the subject matter of the Sekimura opinions. (Pl. Seagate Memo. at 2).

### C. *Compaq*

Prior to seeking discovery from Seagate, the plaintiffs filed a similar motion concerning Compaq, requesting privileged communications and attorney work product with respect to attorneys other than Mr. Sekimura. The plaintiffs sought the "work of Compaq and its various counsel," and "communications among Compaq and between Compaq and others, including its counsel," relating to the subject matter of Mr. Sekimura's opinions. (Pl. Compaq Memo. at 2). As with Seagate, the plaintiffs contended that Compaq waived both the attorney-client privilege and work product immunity with respect to all of its attorneys, including trial counsel. (Pl. Compaq Memo. at 5–7). The plaintiffs argued that any "temporal limitation" on Compaq's waiver should extend "at least through the date of reliance [on Mr. Sekimura's opinions]," since those opinions were received long after suit was filed;[10] the plaintiffs argued that they were "entitled to explore what was known to Compaq at and around the time it allegedly relied upon that opinion." (Pl. Compaq Memo. at 8, 10).

In its opposition papers, Compaq conceded waiver with respect to Mr. Sekimura's opinions, but argued that its waiver "should only extend to the opinions in [Mr. Sekimura's] opinion letter and not to every privileged communication or work product information that relates to the patents-in-suit." (Compaq Opp. at 3, 9). Compaq objected to discovery of *any* communications or work product from trial counsel, asserting that "[t]he opinions on which Compaq is relying were not drafted by Compaq's trial counsel, nor were they drafted by Compaq's outside counsel. There is no connection between the opinions and Compaq's trial counsel." (Compaq Opp. at 4). It also argued that "Compaq has not received any contrary opinion or any information that would call into question or cast doubt on the opinions in [Mr. Sekimura's opinions]." (Compaq Opp. at 5).

---

9. This ruling does not implicate any of Seagate's attorneys other than trial counsel, since the plaintiffs have only requested work product discovery as to "outside counsel." (Pl. Seagate Memo. at 2). Seagate's "outside counsel" appear limited to its trial counsel, to whom this order applies, and its "opinion counsel," Mr. Sekimura, as to whom Seagate has conceded waiver. However, to the extent that the work product of Seagate's in-house counsel is at issue, disclosure is appropriate in any event. *See Electro Scientific*, 175 F.R.D. at 545–46 & n. 4 ("[Materials] located in the files of a party's in-house lawyers would appear to bear directly on that party's state of mind.").

10. The parties do not appear to dispute that Compaq received at least the 12/29/00 Opinion from Seagate in or about November 2002. (Pl. Compaq Memo. at 3; Deposition of Taraneh Maghame dated May 13, 2003, attached as Exh. 1 to Convolve, Inc.'s Memorandum of Points and Authorities in Reply Re: Motion to Compel Discovery from Compaq, at 63–64).

The Special Master issued a ruling on September 23, 2003, holding that Compaq had waived the privilege as to "any counsel, including trial counsel." (9/23/03 Order at 13). He ordered the disclosure of all "opinions" communicated to Compaq by any such counsel, as well as related work product, concerning the subject matter of Mr. Sekimura's opinions. He also imposed temporal and subject matter limitations, ordering full disclosure for the period "up to the date on which [Compaq] concluded [it] would rely on the Seagate opinions," and disclosure of "contradictory opinions ... or those casting doubt on earlier opinions," upon *in camera* review, for the post-reliance period. (9/23/03 Order at 13–14). The parties subsequently moved for clarification and modification of the 9/23/03 Order.

### 1. *Law of the Case Doctrine*

 The "law of the case" doctrine posits that "when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same case." *Schwartz v. Chan*, 142 F.Supp.2d 325, 329 (E.D.N.Y.2001) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)) (alteration in original). However, while the doctrine expresses a practice "generally to refuse to reopen what has been decided," it is "at best, a discretionary doctrine which does not constitute a limitation on the court's power." *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir.2001) (internal quotations and citations omitted); *accord Arizona*, 460 U.S. at 618, 103 S.Ct. 1382 ("Law of the case directs a court's discretion, it does not limit the tribunal's power."). A prior decision should not be revisited "absent cogent or compelling reasons." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir.1999) (internal quotations and citation omitted).

Since the Special Master has already ruled on the plaintiffs' motion concerning Compaq, his 9/23/03 Order constitutes the "law of the case" for this Court. However, strict adherence to the Order may be unwarranted, as the Special Master has utilized a markedly different approach to the advice-of-counsel issues in this case from the one adopted above with respect to Seagate. Following

the Special Master's ruling would therefore create inconsistent outcomes as between the two defendants and possibly cause confusion in the conduct of discovery.

Moreover, the 9/23/03 Order does not comport with the case law as construed above. Specifically, while the Special Master correctly found that by asserting the advice-of-counsel defense, Compaq waived the attorney-client privilege with respect to "any counsel, including trial counsel," he ordered only that any "opinions" of such counsel communicated to Compaq be disclosed, and that such disclosure be limited to the period preceding Compaq's decision to rely on Mr. Sekimura's opinions; only "contradictory opinions" were ordered produced for the post-reliance period. (9/23/03 Order at 13–14).

As previously discussed, the limitation of discovery to "opinions" communicated from counsel is inconsistent with the broad scope of a "subject matter waiver," which extends to "all communications on the same subject matter." *Micron*, 159 F.R.D. at 363. Moreover, the pre- and post-reliance distinction referenced in the Order is unsupported by any case authority, and appears to be an effort by the Special Master to reconcile the case law that sets a temporal limit as of the time of suit with the fact that "the opinions involved [in this case] were rendered long after the suit was filed." (9/23/03 Order at 13). In light of Compaq's continuing duty to take reasonable care, however, any advice of counsel sought or rendered is relevant "during the entire course of the alleged infringement" up to the point of trial. *AKEVA*, 243 F.Supp.2d at 423. Finally, the limitation to "contradictory opinions" in the post-reliance period does not comport with Compaq's "subject matter waiver," which pertains to both positive and negative information received from counsel.

### 2. *Procedural Issues*

Compaq has raised two procedural objections that, if well-founded, could affect the weight that should be given to the law of the case doctrine. Namely, Compaq contends that the Special Master already issued a ruling on its motion for clarification during a

telephone conference on September 26, 2003 (Compaq's 10/1/03 Letter at 1; Tr. at 43–44), and that the plaintiffs' motion for modification was untimely (Compaq's Letter to Hon. George B. Daniels dated October 29, 2003 ("Compaq 10/29/03 Letter") at 1–2, 5). If Compaq is correct, then the Special Master's Order would have been beyond my authority to review.

However, neither of Compaq's procedural objections has merit. With respect to the September 26 telephone conference, the Special Master unequivocally stated: "Putting aside for the moment the scope of what I intended to include within the term Opinion, [Compaq's] e-mail of Sept. 29 accurately sets forth our discussion [on September 26]. *The scope of 'Opinion' will be dealt with in response to the motion for clarification.*" (E-mail from Pasquale Razzano to Robert W. Morris and others dated Sept. 30, 2003) (emphasis added). Accordingly, Compaq's motion for clarification was *not* decided by the Special Master on September 26, 2003. With respect to timeliness, Compaq does not dispute that the Special Master extended the time to file objections to his ruling to October 24, 2003. (Compaq's 10/29/03 Letter at 5). While the plaintiffs' October 24 letter to Judge Daniels may have been styled as a request for a pre-motion conference under Local Rule 37.2 rather than a direct appeal of the Special Master's order under Rule 53 of the Federal Rules of Civil Procedure, it nevertheless raised objections to the underlying substance of the Special Master's ruling. The plaintiffs' motion for modification was therefore timely.

### 3. *Attorney–Client Privilege*

As discussed above, a waiver of the privilege arising from the advice-of-counsel defense waives the privilege as to the subject matter of the advice rendered. This waiver pertains not only to the attorney rendering the advice but also to all other attorneys who may have communicated with Compaq about the subject matter of the advice. Moreover, since a potential infringer has a continuing duty to seek legal advice on patents of which it is aware, the nature of the advice received and the resulting waiver of the privilege extends throughout the period of alleged infringement.

In light of these principles, Compaq's initial contention that the scope of its waiver extends only to the opinions set forth in Mr. Sekimura's reports has no merit. Under Compaq's "subject matter waiver," any communications it may have had with counsel on the issues of infringement, validity, and enforceability are discoverable, even if those communications do not refer specifically to Mr. Sekimura's reports. Moreover, the fact that Compaq's trial counsel did not draft Mr. Sekimura's opinions has no bearing on the scope of waiver, since the independent advice of trial counsel concerning the subject matter in question would be probative of Compaq's state of mind.

With respect to temporal limitations, the time period of a waiver in continuing infringement cases extends, as noted above, from the time a potential infringer becomes aware of another's patent until the alleged infringement ends. Here, the plaintiffs have alleged that Compaq learned of their '635 and '267 patents in 1998 (Pl. Compaq Memo. at 3; Am. Compl., ¶¶ 23–26, 34), and that they notified Compaq of its alleged infringement of the '473 patent in November 2001. (Tr. at 9). It is undisputed that Compaq's alleged infringement is continuing. Accordingly, Compaq's waiver should extend from the time it became aware of the plaintiffs' patents until it ceases the alleged infringement.

Finally, a subject matter limitation to "contradictory opinions" is unwarranted in this case. As discussed above, Compaq's waiver extends to all communications from counsel, not just contrary advice, on the subject matter of Mr. Sekimura's opinions. Moreover, the plaintiffs need not rely on Compaq's representation that no contradictory information was received, as they are entitled to draw their own conclusions based on the discovery produced. *See Dunhall*, 994 F.Supp. at 1205 (discovery must not involve "gatekeeping by defense counsel").

Accordingly, the plaintiffs' motion to compel discovery withheld on the basis of the attorney-client privilege is granted with respect to Compaq. Compaq shall produce all

documents, answers to interrogatories, and deposition testimony concerning communications between Compaq (or its in-house counsel) and any of its attorneys, including trial counsel, with respect to the subject matter of Mr. Sekimura's opinions, i.e., the infringement, validity, and enforcement of the '635,- '267, and '473 patents. The time period of the waiver shall begin at the time Compaq became aware of the patents at issue and shall not end until such time Compaq's alleged infringement ends. Any communications between Compaq and its trial counsel concerning the subject matter of Mr. Sekimura's opinions but also containing or relating to trial strategy or planning may be submitted to the Court for *in camera* review.

### 4. *Work Product Immunity*

As discussed above, discovery of work product, while sometimes necessary to uncover circumstantial evidence of information communicated to the client, is most appropriate in the case of opinion counsel who has been retained to render an opinion on the patents at issue. Where there is no evidence of collusion between trial and opinion counsel, disclosure of trial counsel's work product is unwarranted. As with Seagate, Compaq relies on the separate and independent advice of Mr. Sekimura as the basis of its advice-of-counsel defense, and it has unequivocally stated that its trial counsel has "no connection" with Mr. Sekimura's opinions. Accordingly, work product disclosure from Compaq's trial counsel is unwarranted.

During a hearing before this Court, plaintiffs' counsel added, "[I]f trial counsel is feeding a defendant information that says go get an opinion because you're probably going to have to pay a reasonably royalty here, ... [t]hat's not a reasonable opinion. It may be a perfectly reasonable opinion bought and paid for, but that's not the law." (Tr. at 61–62). As an example, plaintiffs' counsel noted, "Let's say that ... prior to receiving an opinion on the ['473] patent, trial counsel said let's sit down together and figure out [how] not to infringe this patent, let's design around it. And the opinion of counsel that you get months later says that you didn't infringe before; ... I think those are two pretty different things." (Tr. at 62). Plain-

tiffs' counsel argued, "[T]hat happened here," alleging that in October 2002, Compaq's trial counsel "worked with Compaq to design around the ['473] patent," and that subsequently, Compaq decided to rely on Mr. Sekimura's non-infringement opinion in February 2003. (Tr. at 62).

The representations of plaintiffs' counsel do not support a finding that work product privilege was waived with respect to Compaq's trial counsel. Even assuming that trial counsel rendered contrary advice prior to Compaq's reliance on Mr. Sekimura's opinions, that fact does not show that trial counsel helped obtain a "sham" or biased opinion from Mr. Sekimura, or that trial counsel colluded with Mr. Sekimura to produce an opinion favorable to Compaq in this litigation. To the extent that inconsistent advice was rendered, the nature and substance of that advice can be explored, as discussed above, through discovery of privileged communications between Compaq and its trial counsel.

Accordingly, the plaintiffs' motion to compel discovery withheld on the basis of the work product privilege is denied with respect to Compaq. Compaq's trial counsel is not obligated to produce any work product, uncommunicated to Compaq, relating to the subject matter of the opinions issued by Mr. Sekimura. However, the communicated work product of any of Compaq's attorneys is discoverable under Compaq's waiver of the attorney-client privilege. Such communicated work product shall include materials disclosing the fact or substance of Compaq's (or in-house counsel's) communications with any outside counsel.

### *Conclusion*

For the reasons set forth above, I grant the plaintiffs' motions to compel with respect to both defendants as to discovery withheld on the basis of the attorney-client privilege, but not as to that withheld on the basis of work product immunity. The defendants shall respond to the plaintiffs' discovery requests in accordance with this Memorandum and Order.

SO ORDERED.