NITINOL MEDICAL TECHNOL-
OGIES, INC. and Lloyd A.
Marks, Plaintiffs,

v.

AGA MEDICAL CORPORATION,
Defendant.

No. CIV.A. 98–12506–NG.

United States District Court,
D. Massachusetts.

Oct. 26, 2000.

William F. Lee, Hale & Dorr, Boston, MA, for Nitinol Medical Technologies Inc., Plaintiff.

Thomas C. O'Konski, Cesari & McKenna, Boston, MA, Paul T. Dietz, Nikolai, Mersereau & Dietz, Minneapolis, MN, for AGA Medical Corporation, Defendant.

*SUPPLEMENTAL MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL REGARDING WAIVER OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT IMMUNITY*

DEIN, United States Magistrate Judge.

This Supplemental Order will address the sole issue remaining in connection with the parties' cross-motions to compel—namely, whether the defendant AGA Medical Corp. has waived the attorney-client privilege and its counsel's work product immunity by asserting that it relied on the opinion of its counsel.[1] For the reasons detailed herein, unless AGA affirmatively withdraws its reliance on advice of counsel in connection with both its defense of the complaint and its counterclaims, additional materials relating to the advice given by counsel must be produced.

### BACKGROUND

In its complaint filed on December 12, 1998, the plaintiffs (collectively "Nitinol") contend that the defendant ("AGA") infringed on plaintiffs' Patent No. 5,108,420 ("'420 Patent"), and that such infringement was willful. AGA has answered the complaint denying infringement and asserting as affirmative defenses that the '420 Patent is not valid and enforceable. The defendant also has counterclaimed for a declaration of invalidity, unenforceability, and non-infringement of the '420 Patent.

On June 24, 1999, Nitinol served a First Request for Production of Documents and Things and First Set of Interrogatories. Interrogatory No. 10 asked AGA to:

Identify any opinion of counsel concerning the validity, enforceability, or infringement of the '420 patent that AGA has relied upon in making, using, or selling any of the Accused Devices, state whether the opinion was oral or written, state the date upon which AGA received the opinion, identify the person(s) who rendered the opinion, identify each person to whom the opinion was directed, state whether the opinion was directed to the issue of validity, enforceability, or infringement, or to some or all of such issues, identify each person who was informed of the substance or conclusion of the opinion, and identify each person who received a copy of the opinion, if it was written.

In response, AGA objected "to the extent that the information requested is protected by the work product doctrine and attorney-client privilege" and further answered as follows:

Subject to and without waiving the general and specific objections, AGA Medical Corporation states that it has relied on the letters written by its counsel dated January 14, 1998 and January 21, 1998, both of which are being produced and made available for inspection. The documents themselves identify the person who rendered the opinion, each person to whom the opinion was directed, whether the opinion was directed to the issue of validity, enforceability or infringement, each person who informed of the substance or conclusions of the opinion, and each person who received a copy of the opinion. Notwithstanding the above, the production of these documents should in no way be construed as

---

1. This court issued its initial order on Plaintiffs' Motion to Compel (# 14) and Defendant's Motion to Compel (# 56) on September 14, 2000. On October 18, 2000, this Court issued a Supplemental Order on Plaintiffs' Motion to Compel relating to the production of devices for destructive testing. The issues addressed in the present order, which have recently been briefed, are the only remaining issues raised by the Motions to Compel.

a waiver of attorney-client privilege related to all other matters.[2]

AGA did, in fact, produce these letters of counsel to Nitinol in response to this interrogatory, although no copies have been provided to this court. It is agreed, however, that the letters were signed by one of AGA's trial counsel. It also appears that these letters may have been produced in response to plaintiffs' First Request for Production of Documents and Things No. 28 ("[a]ll documents relating to any contention by AGA that it has not willfully infringed the '420 patent") and No. 36 ("[a]ll documents relating to any opinions of counsel received by AGA with respect to the infringement, validity, or enforceability of the '420 patent"). In response to these requests, AGA raised several general and specific objections including the objection that the request "seeks information protected by the attorney-client privilege or the attorney work product doctrine." However, AGA continued, "[s]ubject to the general and specific objections and without waiving them, responsive non-privileged documents, if any, will be produced or made available for inspection . . ." at the offices of defendant's counsel.

Nitinol contends that AGA's decision to produce the opinions of counsel in defense of a claim of willful infringement "waives the attorney-client privilege and work product immunity with respect to other documents related to the subject matter of the opinion." The categories of documents Nitinol is seeking from both AGA and its counsel are attached to its Supplemental Memorandum (# 77) in the form of an Exhibit to a proposed subpoena to counsel and are described *infra*.

AGA objects to the production of any further documents at this time. AGA contends that (1) AGA has not yet raised an advice of counsel defense and should not be called upon to do so until trial on the issue of willfulness; (2) the issue of willfulness relates to damages, and damages discovery has been severed; and (3) the scope of the requested discovery is too broad.

## DISCUSSION

### 1. AGA Has Asserted Reliance On Advice Of Counsel

The issue of reliance on advice of counsel is a common one in patent infringement cases. That is because:

> when a party learns of the existence of a patent, that party must obtain the advice of competent legal counsel before undertaking any actions that may constitute infringement. The failure to seek legal advice is a factor that supports a finding of willful infringement. Conversely, a party's reliance on the advice of counsel is a factor that militates against a finding of willfulness.

*Valois of Am., Inc. v. Risdon Corp.*, No. 3:95 CV 1850 AHN, 1998 WL 1661397, at *2 (D.Conn. Dec.18, 1998) (quoting *Edward Lowe Indus., Inc. v. Oil–Dri Corp. of Am.*, No. 94 C 7568, 1995 WL 609231, at *3 (N.D.Ill. Oct.13, 1995)). As a result, the following common scenario often arises:

> The current convention in patent litigation strategy is as follows: the patent owner opens with a claim for willful infringement; the alleged infringer answers by denying willful infringement and asserts good faith reliance on advice of counsel as an affirmative defense; then the owner serves contention inter-

---

**2.** The quoted language is from AGA's responses to interrogatories which were served on January 14, 2000. A substantively identical answer was served on June 13, 2000. The court does not have a copy of the original answers which seemingly were served on or about July 26, 1999.

rogatories and document requests seeking the factual basis for that good faith reliance defense and the production of documents relating to counsel's opinion; the alleged infringer responds by seeking to defer responses and a decision by disclosure of the opinion; the owner counters by moving to compel; and the alleged infringer moves to stay discovery and for separate trials.

*Valois of Am.*, 1998 WL 1661397, at *3 (quoting *Johns Hopkins Univ. v. CellPro*, 160 F.R.D. 30, 34 (D.Del.1995)). This is substantively the scenario presented by the instant case, except that the opinion letters of counsel have already been produced.

A fair reading of AGA's answer to Interrogatory No. 10 and its response to Nitinol's requests for documents establishes that AGA has indicated that it intends to rely on advice of counsel. There is no question, and AGA does not dispute, that when a party asserts an advice of counsel defense, the result is at least some waiver of the attorney-client and work product privileges, though the scope of the waiver may be the subject of discussion. *See Saint–Gobain/Norton Indus. Ceramics Corp. v. General Electric Corp.*, 884 F.Supp. 31, 33 (D.Mass.1995). Despite its pleadings, however, AGA now claims that even though it did rely on counsel, it has not yet made a decision as to whether to assert a reliance on counsel defense.

This court sees no benefit in holding AGA to a defense it does not intend to assert at trial. For the reasons detailed below, it is now the appropriate time for AGA to make the decision as to whether it intends to rely on the advice of counsel in support of any of its claims or defenses.[3] Therefore, it is ORDERED that unless AGA serves and files within seven (7) days of the date of this Order written notice that it does not intend to rely on the advice of counsel in connection with any claim or defense of this action, it must produce the materials described below. If AGA does provide such written notice, it shall be precluded from introducing any evidence or relying at trial on any claim or defense of advice of counsel.[4]

## 2. *A Stay Of Discovery On This Issue Is Not Warranted*

AGA contends that it should not be called upon to determine whether it intends to rely on advice of counsel at this time because the defense is related to damages and damage discovery has been severed. In addition, AGA has filed a motion for bifurcation of the issue of willfulness for trial which is presently pending before the district judge to whom this case has been assigned for trial. None of these factors justify a stay of discovery on the issue of reliance of counsel.

This case is almost two years old, and discovery should have been virtually completed by this time on both issues of liability and damages. According to the Joint Motion to Extend Certain Pre–Trial Deadlines, which was allowed by the court on February 20, 2000, fact and expert discov-

---

**3.** The parties address the issue whether the production was "voluntary" or "inadvertent" in connection with whether there has been a waiver of the attorney-client privilege. AGA also claims it demanded the letters back if their production would constitute a waiver of the attorney-client privilege with respect to other documents. Since AGA is being given the option of withdrawing its reliance on the opinion letters, the issues of whether the disclosures were inadvertent and, if so, the implications with respect to the attorney-client privilege, do not have to be reached.

**4.** Of course, AGA may decide at trial not to assert reliance on advice of counsel even if it produces the material called for by this Order.

ery with respect to liability was to be completed by July 31, 2000, and fact and expert discovery relating to damages is to be completed by October 31, 2000. Dispositive motions are due on December 29, 2000.

While it is apparent that the parties have not met these deadlines, it is also clear that damages discovery has never been severed, as AGA now contends. Rather, the discovery has been staggered. Therefore, the discovery schedule does not justify a stay of production of documents relating to an advice of counsel defense.

In addition, many courts have found that the issue of willfulness is inextricably intertwined with issues of liability. *See, e.g., Home Elevators, Inc. v. Millar Elevator Serv. Co.,* 933 F.Supp. 1090, 1092 (N.D.Ga. 1996) (denying motion to bifurcate and motion to stay discovery relating to advice of counsel issue), *citing Kimberly–Clark Corp. v. James River Corp.,* 131 F.R.D. 607, 609 (N.D.Ga.1989); *Real v. Bunn–O–Matic Corp.,* 195 F.R.D. 618, 624–626 (N.D.Ill.2000) (same). As the court held in *THK Am. Inc. v. NSK Co. Ltd.,* 151 F.R.D. 625 (N.D.Ill.1993):

> [a] willfulness determination, that is, the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the alleged infringement. In reaching a willfulness determination, a trial court weighs evidence of the totality of the surrounding circumstances in order to ascertain the infringer's good faith or its willfulness. Factors considered include: the infringer's deliberate copying of the ideas or designs of the inventor, the infringer's knowledge of the inventor's patent rights, any good faith

belief or invalidity or infringement formed by the infringer after an investigation of the inventor's patent rights, and the infringer's behavior as a litigant. Undoubtedly, because willfulness is determined from the totality of the circumstances it is the reason why some courts prefer to include the issue of willfulness with the liability phase of a bifurcated trial.

*Id.* at 629–630 (denying motion for separate trial on issue of willfulness and motion to stay production of attorney opinion letter) and cases cited.

The motion to bifurcate the trial is not before me and I will not prejudge the motion. However, in view of the above cited cases, the lengthy discovery period which has already passed in this case, and the straightforward issues presented in this patent infringement case, bifurcation of the issue of reliance on advice of counsel is not justified, at least in the discovery stage. Moreover, since the opinion letters have already been produced, the basic substance of the privileged communication is already known to the opposing party.

### 3. *The Scope Of The Production*

Nitinol contends that by relying on advice of counsel and producing the opinion letters, AGA has waived the attorney-client privilege on all other communications "related to the subject matter" of the opinion letters.[5] In addition, Nitinol contends that AGA has waived any work product protection with respect to (1) all documents reflecting communications between the client and the lawyer providing the opinion, and (2) with respect to documents that were not shared with the client, all documents from the lawyer's files relat-

---

5. Specifically, Nitinol is seeking from AGA and its counsel "all documents constituting, evidencing or reflecting communications between [counsel] or any member of [his] firm

and [AGA] concerning or related to the noninfringement, infringement, invalidity, validity or enforceability" of the '420 Patent.

ing to the factual assertions in the lawyer's opinion.[6]

AGA objects to the scope of the discovery being requested by Nitinol. AGA contends that (1) the opinion letter which it produced[7] relates only to "non-infringement," and that it should not have to produce any documents relating to "infringement, invalidity, validity or enforceability," (2) any production should be limited to "potentially damaging information" prepared by the attorney which is inconsistent with the opinion letter and casts doubts on the opinions expressed by counsel, and (3) counsel should only be required to produce documents that were actually conveyed to the client.

### Attorney–Client Privilege

█ It is beyond question that the "deliberate injection of the advice of counsel into a case waives the attorney-client privilege ...," it is the scope of the waiver which must be decided. *See Mushroom Assoc. v. Monterey Mushrooms, Inc.,* 1992 WL 442892, at *3 (N.D.Cal.1992) (quoting *Handgards Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976)). The waiver of the attorney-client privilege is predicated on the conclusion that a "party should not be allowed to rely on self-serving documents in its defense while withholding potentially damaging information under the guise of the attorney-client privilege." *Micron Separations, Inc. v. Pall*

*Corp.,* 159 F.R.D. 361, 365 (D.Mass.1995) (citation omitted).

Based on the foregoing, this court rules that AGA has waived the attorney-client privilege with respect to communications relating to the subject matter of the opinion given by counsel, Mr. Dietz. *See Micron Separations, Inc.,* 159 F.R.D. at 363–64, and cases cited. AGA contends that it obtained the advice of counsel only on the issue of "non-infringement."[8] The court does not have a copy of the opinion. The issue of infringement is distinct from the issues of validity and enforceability.[9] *See Saint–Gobain/Norton Indus. Ceramics Corp.,* 884 F.Supp. at 33 The "waiver of the attorney-client privilege as to one issue does [not] serve as a waiver of the privilege as to all issues." *Micron Separations, Inc.,* 159 F.R.D. at 365, n. 8, citation omitted.

Applying these principles to the instant case, and in light of the documents requested by Nitinol, this court finds that AGA and its counsel are to produce:

All documents constituting, evidencing or reflecting communications between AGA and Attorney Dietz or any other member or employee of his firm concerning or related to the non-infringement or infringement of the '420 Patent.

In the event that Nitinol contends that the opinion letters cover topics other than non-infringement, this court will review

---

6. Specifically, Nitinol is seeking from defendant's counsel "[a]ll documents considered, reviewed, prepared or relied on by you or any member or employee of your firm related to the factual basis of any opinion expressed to [AGA] concerning the non-infringement, infringement, invalidity, validity or enforceability of" the '420 Patent.

7. Although the defendant's answer to Interrogatory No. 10 refers to two letters, the memoranda on the attorney-client privilege filed with the court refer to only one letter.

8. AGA does not identify other specific limitations which it thinks are relevant. If there are *specific* documents AGA believes should be protected but which have been ordered produced, this court will entertain specific motions for protective orders provided such motions are timely filed in accordance with the Order below.

9. For discovery purposes, the court does not see a distinction between "non-infringement" and "infringement."

the letters upon motion of counsel. In any event, AGA is cautioned "that while it is not required to disclose privileged documents relating to enforceability and [validity] at this time, undisclosed opinion evidence will not be admitted at trial to dispute the charge of willful infringement." *Saint–Gobain/Norton Indus. Ceramics Corp.*, 884 F.Supp. at 34.

### Work Product Doctrine

■ As plaintiff recognizes, there is a split of authority relating to whether work product documents that were not shared with the client must be produced.[10] Nitinol asks this court to follow *Cordis Corp. v. SciMed Life Sys., Inc.*, 980 F.Supp. 1030 (D.Minn.1997). In *Cordis*, patent counsel, who had rendered an opinion on which the defendant had relied, had commissioned certain experiments by several consultants. Counsel relied on the results of those experiments in rendering its opinion. The court concluded that "the Plaintiff may properly discover the work papers of [counsel] insofar as they relate to the garnering of factual bases for the opinions that are expressed in the firm's letter opinions to the Defendant." *Id.* at 1034.

All courts agree that it is the alleged infringer's state of mind which is relevant, and the inquiry is whether the infringer's reliance on the opinion of counsel was reasonable. *See id.* at 1032. As the court explained in *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 837 F.Supp. 616, 620 (D.Del.1993), "evidence that the infringer had actual notice of the patent, and evidence that the infringer sought, obtained and justifiably relied on legal advice from counsel on whether or not the patents were invalid or infringed" is relevant to whether an infringer acted willfully. In assessing whether an infringer's reliance on an opinion of counsel was reasonable:

> courts have found it relevant to look to when the infringer sought counsel's advice (before or after commencing the infringing activities); the infringer's knowledge of the attorney's independence, skill and competence; the infringer's knowledge of the nature and extent of analysis performed by counsel in providing the opinion; and whether the opinion contains sufficient internal indicia of credibility, including a validity analysis predicated on a review of the file histories, and an infringement analysis that compares and contrasts the potentially infringing method of apparatus with the patented inventions.

*Id.*, citations omitted.

Unless it can be established that the defendant knew of the factual basis for counsel's opinions, such work product should not have to be produced.[11] For example, in *Cordis*, it appears that the defendant knew that experiments had been conducted, at which point information about the experiments would be relevant to the defendant's state of mind. In contrast, in the present case there is no evidence before the court as to what the opinions were, much less what information the defendant had about the bases for the opinions. On this record, the analysis applied in *Thorn EMI N. Am., Inc.*, 837 F.Supp. at 620–21 (distinguished by the

---

**10.** Nitinol is not seeking opinion work product but is only seeking documents "related to the factual basis of any opinion." Therefore, this court does not need to address whether documents reflecting the mental impressions, conclusions or legal theories of trial counsel need to be produced. *See Micron Separations, Inc.*, 159 F.R.D. at 366.

**11.** Of course, the fact that an alleged infringer did not have information about the factual basis of counsel's opinion may, in and of itself, be relevant to whether the infringer's reliance on the opinion was relevant.

*Cordis* court), should be applied here. The inquiry should focus on what AGA knew about its counsel's "independence, skill and competence to provide the opinions, what [AGA] knew about the nature and extent of analysis performed by the firm, and what [AGA] knew and had concluded about the credibility, value and reasonableness of the opinion." *Id.* at 621. *See also Micron Separations, Inc.*, 159 F.R.D. at 363. The document request framed by Nitinol is too broad at this time.

Balancing the competing interests at issue here, paragraph 2 of the document request to counsel shall be modified to provide as follows:

> All documents considered, reviewed, prepared or relied on by Attorney Dietz or any member or employee of his firm related to the factual basis of any opinion expressed to AGA concerning the non-infringement or infringement of the '420 Patent to the extent that the factual basis was discussed with or otherwise conveyed to AGA either generally or specifically.

As in the case of the attorney-client privilege discussed above, any evidence not produced on the grounds of work product protection will not be admissible at trial.

### ORDER

WHEREFORE, it is ORDERED that:

1. Unless AGA serves and files within seven (7) days of the date of this Order written notice that it does not intend to rely on the advice of counsel in connection with any claim or defense of this action, it must produce the materials described below. If AGA does provide such written notice, it shall be precluded from introducing any evidence or relying at trial on any claim or defense of advice of counsel.

2. Unless AGA serves and files the notice described in the preceding paragraph, AGA shall produce the following documents within fourteen (14) days of the date of this Order:

> All documents constituting, evidencing or reflecting communications between AGA and Attorney Dietz or any other member or employee of his firm concerning or related to the non-infringement or infringement of the '420 Patent.

Similarly, counsel for AGA shall produce the following documents within fourteen (14) days of the date of this Order:

> All documents constituting, evidencing or reflecting communications between AGA and Attorney Dietz or any other member or employee of his firm concerning or related to the non-infringement or infringement of the '420 Patent.

> All documents considered, reviewed, prepared or relied on by Attorney Dietz or any member or employee of his firm related to the factual basis of any opinion expressed to AGA concerning the non-infringement or infringement of the '420 Patent to the extent that the factual basis was discussed with or otherwise conveyed to AGA either generally or specifically.

3. In the event that AGA believes that specific documents or materials ordered herein to be produced should remain privileged for reasons not addressed herein, AGA may file a specific motion(s) for a protective order within fourteen (14) days of the date of this Order. Nitinol shall file a response seven (7) days thereafter.

### ORDER ON DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

The Defendant's Motion for a Protective Order dated November 21, 2000 is ALLOWED IN PART, and DENIED IN PART.

The production ordered by this court on October 26, 2000 shall be limited to docu-

ments in existence on or before the date this litigation was commenced.

The Defendants shall also produce:

All documents constituting, evidencing or reflecting opinions of Attorney Dietz or any other member of his firm relating to the infringement or non-infringement of the '420 patent which contradict or which are in any way inconsistent with the opinions of counsel dated January 14, 1998 and January 21, 1998 which have previously been produced. This document request shall cover the period to the present.

AGA shall produce the documents ordered produced by this court on October 26, 2000 and herein by no later than December 15, 2000. Failure to produce all responsive documents by December 15, 2000 shall result in the imposition of sanctions.