OUTSIDE THE BOX INNOVATIONS, LLC, d/b/a Union Rich USA, Plaintiff Counter–Defendant,

v.

TRAVEL CADDY, INC., and Rooster Products, d/b/a the Rooster Group, Defendants.

Travel Caddy, Inc., Counter–Plaintiff Counter–Defendant,

v.

Outside The Box Innovations, LLC, d/b/a Union Rich USA; Union Rich Plastic Factory, Ltd.; Bonaka Limited, Counter–Defendants.

No. 1:05–CV–2482–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 6, 2006.

Marc S. Cooperman, Jon O. Nelson, Scott A. Burow, Aimee B. Kolz, Banner & Witcoff, Ltd., for Travel Caddy, Inc.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the Court pursuant to its oral direction made during the hearing held August 24, 2006 concerning Travel Caddy's subpoena issued to Mandy Wilson Decker.

On August 7, 2006, Travel Caddy issued a subpoena for deposition and for production of documents in the Western District of Kentucky to a non-party in this case, Mandy Wilson Decker [# 185]. On August 9, 2006, Union Rich filed an Emergency Motion for Protective Order Regarding the Deposition of Mandy Wilson Decker [# 187]. At the August 24 hearing, the motion for protective order was granted and the Court directed the parties to file briefs on the subject of whether, and to what extent, Union Rich had waived attorney-client privilege and work-product

immunity by relying on the advice-of-counsel defense to Travel Caddy's patent infringement claims. By order dated August 25, 2006, the Court ordered that the subpoena for deposition and for production of documents and related motions filed in the Western District of Kentucky which were presented at the hearing be made a part of the record in this case by Order dated [# 232].

The Court notes that Union Rich, Travel Caddy, and Ms. Decker have filed briefs with the Court on this issue [# s 243, 244, 245, 254, 255].

Ms. Decker, an associate at the law firm of Stites & Harbison, served as the initial opinion counsel to Union Rich in connection with what ultimately became the present lawsuit. In this role, Ms. Decker provided opinion letters to Union Rich on potential infringement issues related to the two patents-in-suit, the 6,823,992 patent and the 6,991,104 patent. Stites & Harbison also served as Union Rich's original litigation counsel, and filed this lawsuit on behalf of Union Rich. As a defense to the charges of willful patent infringement subsequently brought by Travel Caddy, Union Rich has adopted the advice-of-counsel defense. Travel Caddy is seeking to depose Ms. Decker in connection with her role as opinion counsel.

In addition to deposing Ms. Decker, Travel Caddy has demanded the production of certain documents, through a subpoena served on Ms. Decker as an individual. Specifically, and central to the present dispute over the scope of waiver of privilege, is Travel Caddy's request for:

All documents that reflect communications (including all electronic communications) between Union Rich and any attorney at the law firm of Stites & Harbison that relate to the scope, validity, infringement, and/or enforceability of the '992 and '104 patents, including any and all attorney notes, summaries, documents and drafts of documents related to the same subject matters and that embody or discuss a communication between an attorney at Stites & Harbison and Union Rich.

(Notice of Deposition of Mandy Wilson Decker, Exhibit A [# 185] ). Both Union Rich and Ms. Decker independently object to this request.

All interested parties agree that this Court should be guided by the holding of *In re EchoStar*, a recent Federal Circuit decision that has addressed the scope of waiver of privilege in the context of an advice-of-counsel defense to willful patent infringement. 448 F.3d 1294, 1298 (Fed. Cir.2006). In adopting the advice-of-counsel defense, the alleged infringer waives aspects of both the attorney-client privilege and work-product immunity, but these waivers are not the same in scope, and neither is absolute. *Id.* at 1300–01. Because the advice-of-counsel defense "requires the court to decide, *inter alia,* whether counsel's opinion was thorough enough to 'instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable,'" the focus in determining the scope of waiver is on the act of communicating an opinion from counsel to client. *Id.* at 1305 *quoting, Ortho Pharm. Corp. v. Smith,* 959 F.2d 936, 944 (Fed.Cir.1992).

With respect to the attorney-client privilege, the Federal Circuit held that, "when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id.* at 1301. This broad waiver explicitly covers opinions that were communicated by Ms. Decker to Union Rich, and is the reason that Union Rich made no issue with, and produced to

Travel Caddy, the opinions requested in the original subpoena. (Notice of Deposition of Mandy Wilson Decker, Exhibit A [# 185]). With respect to work product immunity, the Federal Circuit held that such immunity is waived "for any document or opinion that embodies or discusses a communication to or from [an accused infringer] concerning whether that patent is valid, enforceable, and infringed by the accused." *EchoStar*, 448 F.3d at 1304. In general terms, the application of *EchoStar* to this case dictates that, "[attorney] work product that was not communicated to [Union Rich] or does not reflect a communication is not within the scope of [Union Rich's] waiver because it obviously played no part in [Union Rich's] belief as to infringement of the ['992 and '104] patent[s]." *Id.* at 1305. This general statement does not address all of the parties' arguments, however.

Union Rich argued at the *Markman* hearing on August 24, 2006, that Ms. Decker provided no opinion as to the validity of the '104 patent, and Ms. Decker argued in the Response of Non–Party Mandy Wilson Decker, Esg. to Travel Caddy Inc.'s Subpoena for Deposition and Production of Documents [# 243] that she must only testify as to the validity of the '992 patent. Union Rich appears to have abandoned this argument in its filings on the scope of waiver, and has acknowledged that it "makes no issue in producing all 'opinions of counsel' provided to and relied upon by the client [ ], and has done so." (Union Rich's Memorandum Regarding Scope of Waiver of Privilege, at 3 [# 245]). If Union Rich has indeed produced all such documents, then the dispute over whether Ms. Decker provided an opinion as to the scope, validity, infringement and/or enforceability of the '104 Patent is moot.

However, Ms. Decker argued in her filings that she did not provide an opinion on the '104 Patent, only the '992 Patent and the application for what would become the '104 Patent. Ms. Decker also argued that any advice on the '104 Patent application is outside the scope of waiver, as defined by Travel Caddy. According to Ms. Decker, because there can be no infringement until a patent is issued, and because Travel Caddy has stated that the scope of waiver is limited to "advice received during the entire course of infringement," Ms. Decker's advice on the '104 application is protected by the waiver.

■ The Court agrees with Travel Caddy that by giving her opinion on the '104 Patent application, Ms. Decker gave her opinion on the '104 Patent, and Union Rich has therefore waived its privilege with respect to the requested communications. First, the claims of the '104 Patent are identical to the claims that appeared in the '104 Patent application reviewed by Ms. Decker. Second, the alleged infringement in this case began with the '992 Patent, and the '104 Patent is a continuation of the '992 Patent. Therefore, while there can be no infringement until a patent is issued, advice about a pending continuation patent is highly relevant to the central issue in willful infringement, the state of mind of the alleged infringer.

■ Ms. Decker has also raised the argument that much of what Travel Caddy has demanded she produce, through a subpoena of her as an individual, is beyond her legal ability to produce. (Response of Non–Party Mandy Wilson Decker, at 7 [# 243]). Travel Caddy interprets the *EchoStar* decision as requiring Union Rich to "produce all communications that embody or reflect communications between Union Rich and *any counsel*—not merely Ms. Decker. This includes communications with other attorneys at Ms. Decker's

firm, as well as communications with litigation counsel." (Defendants' Submission Concerning the Scope of Union Rich's Waiver of Privilege, at 10 [# 244] ). Travel Caddy is correct that the *EchoStar* decision held that if a defendant relies on the advice-of-counsel defense with respect to advice received from in-house counsel, then the waiver of attorney-client privilege applies to advice "relating to the same subject matter" received from other counsel. *EchoStar*, 448 F.3d at 1299. However, a subpoena served on Ms. Decker is not the appropriate method for procuring the requested documents.

Ms. Decker, as an associate at Stites & Harbison, cannot produce documents under the control of Myers & Kaplan, Union Rich's current litigation counsel, nor can she produce documents that are controlled by her own law firm. Rule 45(a)(1)(C) limits the production of documents available through a subpoena to "documents or tangible things in the possession, custody or control of that person." Fed.R.Civ.P. 45(a)(1)(C).

■ Travel Caddy has argued that it is entitled to communications that occurred after the commencement of this lawsuit. The Federal Circuit stated in a footnote that privilege is waived, "when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation." *Id.* at 1302 n. 4. However, the requirement that the advice *be communicated* to the alleged infringer remains, even when applied to advice that occurs after the commencement of litigation. *Id.* at 1302.

■ While *EchoStar* instructs courts to be mindful of a litigant attempting to "use[ ] the attorney-client privilege as both a sword and a shield," 448 F.3d at 1301, the Court will not grant Travel Caddy "unfettered discretion to rummage through all of [Union Rich's] files and pillage all of [Union Rich's] litigation strategies." *EchoStar*, 448 F.3d at 1303. In other words, litigation strategy is not the same as advice-of-counsel, and the waiver that has been clarified in *EchoStar* should not be used to allow unfettered access to documents related to strategy from all attorneys who have been involved in an infringement case.

The Federal Circuit imposed important limits on the scope of the waiver as follows, "[w]hile an accused infringer may waive the immunity for work product that embodies an opinion in letters and memorandum communicated to the client, he does not waive the attorney's own analysis and debate over what advice will be given." *Id.* Furthermore, while the district court in *EchoStar*, reached the same conclusion that privilege is waived for communications made after the start of a lawsuit, it also found that the alleged infringer was entitled to redact information "that it considers solely related to trial strategy." *TiVo Inc. v. EchoStar Comm. Corp.,* 2005 WL 4131649, at *8 (Sept. 26, 2005). This conclusion is consistent with the Federal Circuit's holding that the scope of waiver of privilege does include post-filing communications, but prevents the unfettered access to litigation strategy that concerned the Court. *EchoStar*, 448 F.3d at 1302–03; *see also TiVo*, 2005 WL 4131649, at *8 ("This, in the Court's opinion, reconciles the fear that such discovery could compromise trial preparation and give Plaintiff an unfair advantage with Plaintiff's inquiry into state of mind.").

■ Finally, *EchoStar* makes clear, and all parties agree, that Ms. Decker is permitted to redact or withhold documents or information that were never communicated to Union Rich. *Id.* at 1303. This right to redact is especially important in the context of documents "that reference

and/or describe a communication between the attorney and client, but were not themselves actually communicated to the client." *Id.* at 1304.

Therefore, it is ordered that, with respect to Ms. Decker's subpoena, she be required to produce:

All documents that reflect communications (including all electronic communications) between Ms. Decker and Union Rich that relate to the scope, validity, infringement, and/or enforceability of the '992 and '104 patents, including any and all attorney notes, summaries, documents and drafts of documents related to the same subject matters and that embody or discuss a communication between Ms. Decker and Union Rich. Any such document that includes Ms. Decker's opinions or mental impressions never communicated to Union Rich may be redacted to exclude those uncommunicated portions. Ms. Decker may redact any information that she considers solely related to trial strategy.

Furthermore, consistent with the *EchoStar* holding, the overall scope of Union Rich's waiver in relying on the advice-of-counsel defense includes:

Any document or opinion that embodies or discusses a communication to or from Union Rich concerning whether the '992 and '104 patents are valid, enforceable, and infringed by Union Rich, regardless of the counsel involved, and regardless of the date. Any document or opinion that falls within the scope of the waiver, but which includes opinions or mental impressions never communicated to Union Rich, may be redacted to exclude those uncommunicated portions. Union Rich may redact any information that it considers solely related to trial strategy.

Accordingly, non-party Mandy Wilson Decker is directed to comply with Travel Caddy's subpoena for deposition and pro-duction of documents [# 185] as stated herein.