LIFENET, INC. Plaintiff,

v.

MUSCULOSKELETAL TRANSPLANT FOUNDATION, INC. Defendant.

No. 3:06 CV 387 HEH.

United States District Court,
E.D. Virginia,
Richmond Division.

May 24, 2007.

Craig Thomas Merritt, Nichole Buck Vanderslice, Rowland Braxton Hill, IV, Christian & Barton LLP, Richmond, VA, Anthony Roth, Corinne A. Niosi, Jennifer Lynn Scism, Robert William Busby, Jr., William Jackson Matney, Jr., Morgan Lewis & Bockius LLP, Washington, DC, for Plaintiff.

Dana Johannes Finberg, Leclair Ryan PC, Richmond, VA, Thomas Gerard Rowan, Brian Michael Poissant, Daniel Lawrence Malone, Eric Stops, Jones Day, New York, NY, Michelle Karen Fischer, Thomas Robert Goots, Jones Day, Cleveland, OH, for Defendants.

### MEMORANDUM OPINION

DOHNAL, United States Magistrate Judge.

This non-dispositive matter is before the Court pursuant to 28 U.S.C. § 636(b)(1)(A) on the Plaintiff LifeNet, Inc.'s ("LifeNet") Motion to Compel Production of Opinions of Counsel and Related Materials, and memorandum in support thereof (docket entry nos. 77 & 78.)[1] The relevant issues

---

1. There are additional discovery motions that the Court will also resolve, but which do not necessitate discussion because counsel have resolved the related disputes. *See* LifeNet's Mot. Determine Sufficiency of Answers to Request for Admis. (docket entry no. 44), and LifeNet's Mot. Entry of Protective Order Preventing Barbara Boyan, Ph.D. From Receiving LifeNet's Confidential Materials (docket entry no. 79). The additional motions are resolved in the Order accompanying this Memorandum Opinion.

have been extensively briefed. The Court has entertained oral argument by conference call and the legal contentions are adequately presented in the materials before the Court. For the reasons set forth herein, LifeNet's Motion is GRANTED IN PART and DENIED IN PART.

## I. Relevant Facts

This is a patent infringement action involving a bone cleansing process with clinical application. Part of LifeNet's Complaint includes a claim for willful infringement on an ongoing process. (Compl. ¶¶ 18–49 (docket entry no. 25).) On February 19, 2002, Scott Stimpson, Esquire (an attorney then representing Defendant Musculoskeletal Transplant Foundation, Inc. ("MTF")) authored a non-infringement opinion (the "2002 Opinion") for MTF. The 2002 Opinion concluded that MTF's bone washing process did not infringe LifeNet's bone washing patents. (LifeNet's Mem., Sealed Ex. 23.) The 2002 Opinion specifically referred to two of the patents that are the basis of this action ("patents-in-suit"), U.S. Patent Nos. 5,797,871 and 5,976,104. On April 13, 2007, MTF advised the trial court that it would rely on the 2002 Opinion as a defense to LifeNet's willful infringement claim.

MTF produced the Opinion on April 25, 2007, along with "nearly 400 pages of documents related to that opinion." (MTF's Opp'n at 4 (docket entry no. 87.)) On April 30, LifeNet sent a letter to MTF claiming that the document production was deficient. MTF responded on May 2, 2007, and indicated that it would "produce other written opinions of counsel in MTF's possession, custody, and control that are directed to LifeNet's patents-in-suit, along with the documents relating to the preparation of those opinions." (Id.)

Dissatisfied with the planned production, LifeNet filed its Motion to Compel on May

4, 2007. MTF concedes that: "By announcing its intent on relying on opinion of counsel as a defense to willful infringement, MTF accepts that it has waived privilege and/or work product protection for certain documents pertaining to LifeNet's patents-in-suit." (MTF's Opp'n at 6.) The ultimate question before the Court is how a party's assertion of the advice-of-counsel defense impacts on that party's concomitant waiver of the attorney-client privilege and related work product doctrine.

## II. What LifeNet Wants

LifeNet seeks production of: all opinions of counsel and related materials concerning MTF's bone cleaning technology and patents, and those relating to MTF's demineralization technology and patents, as well as those related to LifeNet's bone cleaning and demineralization patents that are the subject of the present lawsuit. (LifeNet's Br. 15–16; LifeNet's Supp'l Br. 6–7.) LifeNet also seeks production of all work product that embodies communications between MTF and its counsel, or that refer to such communications. (LifeNet's Br. 16.)

## III. What MTF Concedes is Discoverable (the "Concessions")

MTF concedes that the following documents are properly discoverable:

(1) Documents relating to the 2002 Opinion concerning MTF's non-infringement of LifeNet's bone cleaning patents;

(2) Other opinion letters, and related documents, from non-trial counsel, concerning non-infringement of LifeNet's patents; and

(3) Other opinion letters, and related documents, from non-trial counsel, concerning other patent defenses (e.g.,

invalidity and unenforceability) to LifeNet's patents.

(MTF's Opp'n at 2) (docket entry no. 87.)

### IV. What MTF Has Refused to Produce

MTF disputes that the following are discoverable:

(1) Documents generally related to MTF's bone cleaning technology and/or MTF's demineralization technology; and

(2) Documents similar to # 2 and # 3 in the Concessions, *supra,* but from trial counsel.

(*Id.*)

### V. Standard of Review

■ Federal Circuit law governs issues of privilege and discoverability arising from the assertion of the advice-of-counsel defense in patent litigation. *See In re EchoStar,* 448 F.3d 1294, 1298 (Fed.Cir. 2006) ("[Q]uestions of privilege and discoverability that arise from the assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law." (citation omitted)). The burden is on Defendant MTF to establish nonwaiver. *See In re Regents of the Univ. of Cal.,* 101 F.3d 1386, 1390 n. 2 (Fed.Cir.1996) ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit."); *In re Grand Jury Proceedings,* 33 F.3d 342, 353 (4th Cir.1994) ("The burden is on the party asserting the privilege to demonstrate the applicability of the asserted privilege.").

### VI. Analysis

#### 1. The Federal Circuit's Decision in EchoStar

*In re EchoStar Commc'ns Corp.,* 448 F.3d 1294 (Fed.Cir.2006), is the seminal Federal Circuit decision addressing the scope of an infringing party's waiver of the attorney-client privilege and work product protections when that party asserts the advice-of-counsel defense to a willful patent infringement claim. Therefore, to resolve the current dispute, it is necessary to analyze *EchoStar.*

Before litigation, the accused infringer (Echostar) obtained the advice of its in-house counsel. After it was sued for infringement, the accused's activities continued and EchoStar obtained "additional legal advice" from outside opinion counsel. EchoStar asserted the in-house, pre-litigation opinion as a defense to the charge of willfulness, but did not assert reliance on the post-filing advice of outside opinion counsel. In other words, EchoStar argued that communications made from outside counsel were privileged. *Id.* at 1299. The Federal Circuit held that "when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter including communications with counsel other than in-house counsel, which would include [the post-filing advice of outside opinion counsel]." *Id.* As to the work product exemption, the Federal Circuit found that assertion of the advice of counsel defense was a waiver "for any document or opinion that embodies or discusses communication to or from [the accused infringer] concerning whether that patent is valid, enforceable, and infringed by the accused." *Id.* at 1304. This waiver applies to both the attorney-client privilege and the work product exemption. *Id.*

#### 2. LifeNet's Motion to Compel in Light of the EchoStar Holding

■ LifeNet seeks an order compelling discovery of any advice of counsel that MTF has received related to whether its bone-cleaning and demineralization patents infringe the patents at issue in this suit. This is so because LifeNet claims continu-

ing willful infringement, and MTF intends to present evidence that it obtained continuing legal advice that its products did not so infringe so as to support its defense of a lack of willfulness. (Compl.¶¶ 18–49.)

■■ "Once a party announces that it will rely on advice of counsel … in response to an assertion of willful infringement, the attorney-client privilege is waived. The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to *all other communications relating to the same subject matter,*" *EchoStar,* 448 F.3d 1294, 1299 (Fed.Cir.2006) (citation omitted and emphasis added), including "any documentary communications such as opinion letters and memoranda," *id.* at 1302. The waiver also extends to "documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client." *Id.* at 1302–04. The waiver does not, however, extend to "documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client" because such "opinion" work product provides little assistance to the court in determining whether the accused knew it was infringing. *Id.* Thus, work-product material that is never communicated to the client is not discoverable. *Id.* at 1303.

But "[b]y asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer," here MTF, "and his or her attorney do not give their opponent," LifeNet, "unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *Id.* Indeed, "[w]ork-product waiver extends only so far as to inform the court of the infringer's state of mind." *Id.* The Court must inquire whether the work-product is:

thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable. It is what the alleged infringer knew or believed, and by contradistinction not what other items counsel may have prepared but did not communicate to the client, that informs the court of an infringer's willfulness.

The overarching goal of waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice.

*Id.* (internal citation omitted).

In sum, the *EchoStar* court pronounced:

[W]hen an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused. This waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client.

.     .     .     .     .

In sum, the advice-of-counsel defense to willfulness requires the court to decide, *inter alia,* whether counsel's opinion was thorough enough to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable.

*Id.* at 1304–05 (citation and internal quotation marks omitted).

Given such controlling guidance, LifeNet attempts to reach too far in seeking *all* documents relating to MTF's bone cleaning technology and demineralization technology and products. Instead, discovery should be limited to those documents or opinions embodying or discussing a communication to or from MTF concerning whether MTF's patents are valid, enforceable, or are otherwise infringing or potentially infringing against those of LifeNet. *See id.* The parties must be mindful that documents reflecting the attorney's mental impressions, but which were not given to the client, are not discoverable (because they offer no guidance into MTF's state of mind). *Id.* at 1303. The Court will not review each entry in MTF's privilege log to decide that which is discoverable and that which is not. Rather, MTF is to disclose those documents to which any attorney-client privilege and work product protection has been waived in light of *EchoStar* and this Memorandum Opinion, with any remaining disputed issues to be resolved by this Court if counsel cannot resolve an issue by an initial "meet and confer" negotiation.

### 3. Whether MTF's Waiver Extends to Trial Counsel Materials

■ MTF has conceded that advice received from non-trial counsel is discoverable. But MTF has refused to produce any discovery related to any advice of counsel it has obtained from trial counsel.[2] Whether advice received from trial counsel is discoverable in a patent case where the advice-of-counsel waiver is implicated is a question that has plagued the courts since *EchoStar* was decided, resulting in inconsistent precedent.

Substantively, *EchoStar* did not address whether the advice-of-counsel waiver would extend to trial counsel. *See Ampex Corp. v. Eastman Kodak Co.,* No. 04–1373–KAJ, 2006 WL 1995140, **3–4, 2006 U.S. Dist. LEXIS 48702, at *11 (D.Del. July 17, 2006). Indeed, the Federal Circuit recently cited *EchoStar* when it invited parties in another patent infringement suit to address this precise issue: "Should a party's assertion of the advice of counsel defense to willful infringement extend waiver of the attorney-client privilege to communications with that party's trial counsel?" *In re Seagate Tech., LLC,* Misc. Docket No. 830, 214 Fed.Appx. 997, 997, 2007 U.S.App. LEXIS 2457, at * 1 (Fed. Cir. Jan. 26, 2007). The Federal Circuit intends to address this issue *en banc.* Even though the Federal Circuit's resolution of the issue would be dispositive of the question here, the Court cannot withhold its decision given the procedural posture of this case, including the impending nature of the discovery cut-off date, as well as the fact that the Markman hearing before the trial court is imminent.

In the wake of *EchoStar,* some courts have concluded that waiver should extend to trial counsel, while other courts have disagreed; and still others have found waiver, but only on a limited basis. For those concluding that waiver extends to

---

**2.** While LifeNet stipulated in conjunction with the required Rule 26 conference "that the date of filing the initial complaint will serve as the 'cut-off' date for the production of information," it qualified the limit by adding: *"with the exception of on-going liability* and damages discovery, which will be supplemented as necessary if liability is established." (MTF's Opp'n, Ex. 1 (emphasis added.)) MTF responded and agreed "to produce post-filing documents and information only relevant to damages *and only to the extent necessary if liability is first established."* (*Id.,* Ex. 2 (emphasis added.)) It is not clear what is meant by having to first establish liability to trigger the obligation to produce post-filing discovery, and so the Court will assume such discovery has not been waived by LifeNet where the Complaint alleges on-going infringement. The trial court can rule on the final admissibility of such evidence at trial in any event.

trial counsel, *see, e.g., Celerity, Inc. v. Ultra Clean Holding, Inc.,* 476 F.Supp.2d 1159, 1166 (N.D.Cal.2007) ("The issue in willfulness, especially alleged continuing willful infringement, is what the client knew, both before and after the filing of the complaint, regardless of who conveyed the information."); *Iridex Corp. v. Synergetics, Inc.,* 2007 WL 445275, *1, 2007 U.S. Dist. LEXIS 7747, at *2–3 (E.D.Mo. Feb. 2, 2007) ("This waiver applies to advice from trial counsel as well as formal opinion letters obtained from other lawyers." Thus, "[The alleged infringer] must provide discovery about opinions of counsel that were communicated to [the alleged infringer] concerning whether its accused devices infringe, regardless whether the opinions were given by trial counsel or by other lawyers[.]"); *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.,* 2006 WL 3050883, *4, 2006 U.S. Dist. LEXIS 77077, at *12–13 (E.D.N.Y. Oct. 23, 2006) ("The Special Master's holding that the waiver extends to trial counsel is consistent with *EchoStar*."); *see id.* at 2006 WL 3050883, *4, 2006 U.S. Dist. LEXIS 77077, at *13 ("... the Federal Circuit would extend the waiver to all attorneys who provided advice, including, in the case of ongoing infringement, trial counsel."); *Outside the Box Innovations, LLC v. Travel Caddy, Inc.,* 455 F.Supp.2d 1374, 1377–78, 1378 (N.D.Ga.2006) (advice received from counsel other than opinion counsel after the start of the lawsuit is waived; but waiver does not include unfettered access to litigation strategy); *Genentech, Inc. v. Insmed, Inc.,* 442 F.Supp.2d 838, 847 (N.D.Cal.2006) ("Waiver of trial counsel communications with the client should apply to documents and communications that are most akin to that which opinion counsel normally renders—*i.e.,* documents and communications that contain opinions (formal or informal) and advice central and highly material to the ultimate question of infringement and validity ....."); *Affinion*

*Net Patents, Inc. v. Maritz, Inc.,* 440 F.Supp.2d 354, 356 (D.Del.2006) (finding that defendant waived attorney-client privilege "as to communications with 'litigation counsel,' and any other counsel, to the extent the communications relate to non-infringement, invalidity, and any other defense to infringement."); *Beck Sys., Inc. v. Managesoft Corp.,* 2006 WL 2037356, *5, 2006 U.S. Dist. LEXIS 53963, at *15 (N.D.Ill. July 14, 2006) ("Echostar did not disturb the approach we adopted in [a previous case] which extends the waiver to attorney-client privilege and certain work-product material involving trial counsel."); *Informatica Corp. v. Bus. Objects Data Integration, Inc.,* 454 F.Supp.2d 957, 958, 965 (N.D.Cal.2006) (finding that "BODI waived privilege for both pre- and post-filing pertinent attorney-client communications and work product" and that "it is immaterial whether BODI's opinion counsel and trial counsel are from the same firms, different firms or are even the same person."); *Akeva L.L.C. v. Mizuno Corp.,* 243 F.Supp.2d 418, 423 (M.D.N.C.2003) ("[A]ll opinions received by the client relating to infringement must be revealed, even if they come from defendants' trial attorneys.").

A minority of courts have rejected outright the complete waiver of communications with trial counsel. *See Ampex Corp.,* 2006 WL 1995140, *3, 2006 U.S. Dist. LEXIS 48702, at *10 (rejecting argument that waiver should extend to trial counsel as that would "demolish[ ] the practical significance of the attorney-client privilege, a result obviously at odds with other comments in *EchoStar*"); *Indiana Mills & Mfg., Inc. v. Dorel Indus., Inc.,* No. 1:04–cv–01102–LJM–WTL, 2006 WL 1749413, **6–7, 2006 U.S. Dist. LEXIS 34023, at *19 (S.D.Ind. May 26, 2006) ("There is no indication that the *EchoStar* court intended to extend this waiver to communication of trial counsel or to work product of trial

counsel."), *withdrawn*, 2006 WL 1993420, 2006 U.S. Dist. LEXIS 47852 (S.D.Ind. July 14, 2006) (withdrawing opinion because court "had been under the impression that Dorel had never sought additional opinions of counsel post-filing").

The District Court for the District of Columbia has incorporated a middle ground approach that permits the scope of waiver extending to trial counsel, but only on a limited basis. *See Intex Recreation Corp. v. Team Worldwide Corp.*, 439 F.Supp.2d 46, 52 (D.D.C.2006) (adopting a "middle ground" approach under which "waiver extends only to those trial counsel work product materials that have been communicated to the client and contained conclusions or advice that contradict or cast doubt on the earlier opinions") (internal quotation marks omitted). The rationale of the decision is that if the trial attorney's opinions support the earlier opinions from prior counsel regarding any alleged infringement, such evidence would be redundant, duplicative, and offer nothing new to the case. On the other hand, if the trial attorney's opinions contradict or cast doubt on earlier opinions, such evidence would be highly probative to the alleged infringer's state of mind in terms of continuing, willful infringement. Such a rationale, however, presents practical problems because of the difficulty for a party to discern that which is contradictory or otherwise casts sufficient doubt on the advice-of-counsel opinion making disclosure necessary. Such is particularly true where trial counsel, always an advocate for his client, must make the unilateral decision of whether his or her own advice should be disclosed. The issue is further complicated by the basic difference between the broader reach of discovery (that which may "lead to the discovery of admissible evidence," *see* Fed.R.Civ.P. 26(b)(1)), and what is admissible at trial.

The Court concludes that the majority approach is more persuasive. The Federal Circuit's rejection of a temporal limit on waiver—*i.e.*, that a waiver can extend to advice and work product given even after litigation begins, *see EchoStar*, 448 F.3d at 1303 n. 4—suggests particular solicitude that favors broad waiver. *Celerity, Inc.*, 476 F.Supp.2d at 1165 (quoting *Genentech, Inc.*, 442 F.Supp.2d at 846). The court in *EchoStar* noted that waiver apples to "*any* attorney-client communications relating to the same subject matter," 448 F.3d at 1299 (emphasis added), and such a conclusion is especially appropriate in cases where ongoing infringement is at issue. Bearing in mind that an alleged infringer asserting the advice-of-counsel defense to a claim of willful infringement of a particular patent "waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused," *id.* at 1304, and that "[t]he overarching goal of waiver . . . is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice[,]" *id.* at 1303 (citations omitted), such waiver must logically also extend to legal opinions of trial counsel if there are allegations of continuing infringement. If trial counsel opined to MTF regarding its continuing alleged infringement of LifeNet's patents, then such an opinion is discoverable under *EchoStar*. If such an opinion contradicts the 2002 Opinion, then such evidence, if omitted from the factfinder's consideration, could be used as an impermissible sword in MTF's defense (because it could provide insight into MTF's state-of-mind regarding ongoing willful infringement, but yet would never be disclosed). If such an opinion buttresses that of the 2002 Opinion, then MTF should not fear its disclosure at this juncture of the pro-

ceedings. *See Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, 2006 WL 3050883, *4, 2006 U.S. Dist. LEXIS 77077, at * 13 ("Excluding trial counsel from the scope of the waiver would permit a party to use the attorney-client privilege as both a sword and shield by allowing a party to choose which opinions are disclosed and which are not."). The trial court can then decide if any redundant evidence must be excluded as unnecessarily duplicative. Moreover, in a patent case, the party against whom waiver is sought makes the voluntary decision to rely on advice of counsel and, in making such a decision, the waiving party must assume the risk in accepting the benefit of its election.[3]

Finally, in explaining the scope of the waiver of attorney-client privilege and work product immunity, *EchoStar*, 448 F.3d at 1303 n. 4, the Federal Circuit cited favorably to *Akeva, supra,* which held that "all opinions received by the client relating to infringement must be revealed, even if they come from defendants' trial attorneys .…" *Akeva,* 243 F.Supp.2d at 423. The reasoning of the *EchoStar* opinion, as well as the supporting citation to *Akeva,* indicates that the Federal Circuit would extend this waiver to all attorney/client relationships, irrespective of whether it involves trial counsel or not. *Beck,* 2006 WL 2037356, *5, 2006 U.S. LEXIS 53963, at *16 n. 1. Simply stated, if there are previously privileged trial counsel materials that would shed light on MTF's state-of-mind concerning continuing willful infringement, those documents and memoranda are discoverable. "It is what the alleged infringer knew or believed … that informs the court of an infringer's willfulness," *EchoS-*

*tar,* 448 F.3d at 1303, regardless of who conveyed the information.

For all of these reasons, LifeNet's motion is GRANTED IN PART and DENIED IN PART. An appropriate Order shall issue.

---

**3.** Since waiver does not extend to "documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client," *EchoStar,* 448 F.3d at 1302, 1303–04, MTF's assertion that its only "communications with trial counsel have been related to trial tactics and strategy," (MTF's Opp'n at 9), in so far as they were not disclosed to the client, are protected or may otherwise be properly redacted.